FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 NOV -8  AM 11: 40

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. 00-319 |
| v. | * | SECTION: "D" |
| HARRY C. HANDY | * | |
| | *   *   * | |

### GOVERNMENT'S PRE HEARING MEMORANDUM BRIEF

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits this Memorandum Brief pursuant to this Court's briefing notice.

### ISSUE PRESENTED

1.    Whether Harry Handy is entitled to relief under 28 U.S.C. § 2255 when the totality of the record evidence and testimony at the evidentiary hearing negate all relevant contested factual issues, specifically, whether Harry Handy was instructed to lie during the plea colloquy as to his possible sentencing exposure, which he now claims was limited to 13 years by his attorneys.

_____ Fee_____
_____ Process_____
  X   Dktd_____
  ✓   CtRmDep_____
_____ Doc. No_____

## STATEMENT OF THE FACTS

### 1.    Course of the Proceedings

On March 21, 2001, defendant-appellant Harry Handy ("Handy") pleaded guilty to one count of a multi-count, multi-defendant superseding indictment charging him with conspiracy to distribute more than five kilograms of cocaine and more than 50 grams of cocaine base ("crack").    See Volume ("Vol.") 2 (transcript of rearraignment);[1] Vol. 1, 293-303 (superseding indictment). At rearraignment, this court advised Handy of the mandatory minimum and maximum penalties he faced, that this court could impose the maximum sentence, and that only this court had the power to determine Handy's sentence. See Vol. 2, 6-10.  As detailed below, Handy repeatedly affirmed his understanding of these facts.  See id. and supra, Part 2.

Handy's plea was pursuant to a written plea agreement with the government which informed Handy that the maximum sentence to which he could be exposed was life in prison.  See Vol. 1, 263.  In the agreement, Handy attested that he understood the maximum and minimum penalties and that any discussions concerning the sentencing guidelines were "merely rough estimates and the Court is not bound by those discussions."  Id. at 263, 265.

---

[1]All cites to the record are by Volume ("Vol.") followed by the page number.

On June 19, 2001, Trial Counsel, Harry Boyer, assisted by Clifton Stoutz,[2]
secured a court order continuing Handy's sentencing from June 20, 2001, to July 11,
2001, to allow counsel additional time to file objections to the Presentence
Investigation Report ("PSIR"). Vol. 1, 243. Trial counsel filed seventeen objections
and succeeded in convincing the United States Probation Office that the proper
offense level should be 34 rather than 36 because there was insufficient evidence
linking Handy to 67.8 grams of crack. See PSIR Supplemental Addendum. This
resulted in a reduction in Handy's sentencing range from 324 to 405 months, to 262
to 327 months. The reporting officer made detailed findings as to his rejection of
Handy's remaining objections and the PSIR's recommendation of two-level increases
for use of a dangerous weapon, aggravating role and reckless endangerment. See
PSIR, p. 14; PSIR Supplemental Addendum, pp. 30-35.

On July 11, 2001, this court sentenced Handy to the maximum of 327 months
(27.25 years) incarceration. See Vol. 3 (sentencing transcript). This court explained
that it imposed the maximum sentence "based on your criminal history, including

---

[2]Court records indicate Stoutz was standing in for Boyer at the arraignment on the initial
indictment, Vol. 1, 313, although Boyer appeared on behalf of Handy at his initial appearance,
detention hearing and arraignment on the superseding indictment. Id. at 281, 324-27. Boyer is
listed as working for Frank DeSalvo, APLC on an initial motion, id. at 274-75, but Stoutz was
enrolled as co-counsel as of the date of rearraignment. Id. at 268-69. The weight of the record
indicates Boyer was Handy's chief attorney throughout the proceedings and is the one who
negotiated the deal leading to the plea agreement.

repetitive drug trafficking crimes and violent tendencies." Id. at 5. Count 1 of the

original indictment was dismissed pursuant to the plea agreement.    Id. at 6.    The

government, pursuant to the plea agreement, did not seek any enhancement as

provided in 21 U.S.C. § 851 which would have enhanced the minimum sentence to

20 years. See generally id.

At allocution, Handy stated that he wished "to take my plea back" but gave no

reasons and made no other effort to withdraw his guilty plea. See Vol. 3, 4.

Handy appealed his conviction based on the plea colloquy, contending the

district court erred by failing to advise that his right to trial included the right to a

"jury" trial, which the Fifth Circuit rejected. *United States v. Handy*, No. 01-30884

(5th Cir. Nov. 13, 2002), Vol. 1, 185-88. Significantly, Handy also contended that he

should have been permitted to withdraw his guilty plea based on his dissatisfaction

with his sentence, which the Fifth Circuit found "highly improbable":

> Handy has filed a supplemental brief on appeal arguing for the first time
> that the district court's denial of his oral motion to withdraw his guilty
> plea requires reversal.  The district court did not abuse its discretion in
> denying Handy's last-minute pro se request to withdraw his guilty plea
> (made near the conclusion of the sentencing hearing and over three and
> a half months after the plea had been accepted) because Handy did not
> properly support the motion by asserting any fair and just reason for
> withdrawing his guilty plea.... As for the contention in the supplemental
> brief that Handy (who was represented by counsel throughout) was not
> given an opportunity to state reasons for his motion, neither he nor his
> counsel ever sought or attempted to state any reasons or ever requested

4

to be allowed to do so, or requested a hearing or an opportunity to confer or the like, or made any objection to the court's ruling on any such ground (or indeed on any ground). All contentions respecting withdrawal of the plea were raised for the first time in the supplemental brief on appeal. Nowhere in that brief, nor anywhere in the record, is there any suggestion of any reason why or on what basis withdrawal of the plea was sought or should have been allowed or what would or could be shown in that respect if the case were remanded; <u>indeed the record indicates it is highly improbable that there could be any fair and just reason to withdraw the plea</u>. We conclude that the contentions respecting Handy not being afforded any opportunity to state reasons are governed by Fed. R. Crim. P. 52(b), that no prejudice has been shown and that reversal is not called for.

Vol. 1, 187-88 (emphasis added).

Handy sought to revisit this issue and raised numerous other claims in a § 2255 petition filed in July 2003. Vol. 1, 98-167. Four months later, following the filing of the government's response, Handy moved for an evidentiary hearing. Vol. 1, 82-87. This court denied these motions. <u>See</u> Vol. 1, 31-57. In particular, this court concluded that the record evidence and particularly "the court's Rule 11 colloquy with Handy, the written and signed Plea Agreement, the Factual Basis and the Affidavits of his retained counsel" warranted rejection of Handy's claim that his counsel was ineffective or that his plea was involuntary. <u>Id.</u> at 41-43. This court also concluded that "based on the record (including the Rearraignment Transcript, the plea agreement, Handy's signed factual Basis, and the Factual Bases of Handy's co-Defendants), appellate counsel could not have objectively concluded that an appeal

to the Rule 11 colloquy would have been successful, as any alleged variance from

Rule 11 could not have been reasonably viewed as a material factor affecting Handy's

decision to plead guilty." Id. at 47-48. Further:

> At the sentencing hearing, Handy told the court that he wanted to take his plea back. (Sentencing TR. at 4). The contemporaneous court record shows that Handy voluntarily, knowingly and intelligently entered his guilty plea. The court did not allow Handy to withdraw his plea because there was no fair and just reason for the withdrawal.
>
> Handy was on notice as a result of the court's Rule 11 colloquy of his actual exposure to his sentence. Handy does not claim that he is actually innocent or that his plea would have been successfully-withdrawn, had his counsel filed a motion to withdraw his plea. "Unfulfilled expectations of a deal for a lighter sentence do not constitute a fair and just reason for allowing withdrawal of a guilty plea." United States v. Badger, 925 F.2d 101, 104 (5th Cir. 1991). Thus, Handy cannot show "prejudice" because he cannot establish that there is a reasonable probability that but for the failure of his counsel to file the alleged requested motion, the result of the proceeding would have been different.

Vol. 1, 48-49.

This court concluded that the record, "including the Rearraignment Transcript,

the Factual Basis, the plea agreement, the PSR and the co-defendants' pleas and

factual bases," together with retained counsels' affidavits,[3] did not support Handy's

---

[3]Handy attached an alleged prior affidavit from co-counsel Stoutz, but Stoutz indicated the prior affidavit was not legitimate as it was not notarized, and although Stoutz had prepared a prior affidavit in relation to Handy's plea, that affidavit "mirror[ed] the facts stated in this affidavit." Stoutz Affidavit at ¶ 7, attached as Exhibit ("Ex.") Q to the Government's Opposition to Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("government's opposition" or "Gov. Opp."). The government's opposition was

claim that he was instructed to lie during the plea colloquy, that he received any assurances concerning sentencing enhancements or that his plea otherwise was unknowing and involuntary. Id. at 49-50.

This court also rejected Handy's contention that the government "breached the plea agreement by failing to provide petitioner with an opportunity to cooperate and receive a downward departure for substantial assistance." Id. at 50. This court observed that Handy's plea agreement created no obligation on the part of the government to file a motion based on substantial assistance. Id. This court noted that Handy did receive a promise by the government not to seek a 28 U.S.C. § 851 enhancement and benefitted from three points for acceptance of resposibility. Id. at 50-51. "Loss of these benefits alone would have exposed Handy to a mandatory mini[m]um of 20 years and would have raised his total offense level to 40, exposing him to a sentencing range of 360 months to life." Id. at 51.[4]

---

filed under seal in this court and it remains under seal in the appellate record because it references and includes as an attachment a co-defendant's PSIR. As record page numbers are not available for these sealed materials, the government will refer to the internal pagination and exhibit numbers.

[4]Handy made various other improbable arguments in his § 2255 filing including, for example, that his counsel should have objected to the application of the reckless endangerment enhancement because Handy denied being the driver of the car despite all evidence to the contrary, including co-defendants' factual bases. See Vol. 1, 53-54; Gov. Opp., Exs. G, page 3; and, J, page 2.

The Fifth Circuit granted Harry Handy a COA[5] on the following issues:

1.    Whether trial counsel was ineffective by promising falsely that he would

      be sentenced to no more than 13 years in prison if he pleaded guilty.

2.    Whether his attorneys' false promises made his guilty plea unknowing

      and involuntary.

3.    Whether the district court should have convened an evidentiary hearing

      on these issues.

Handy sought reconsideration, and the Fifth Circuit granted an additional

COA[6] on the issue of:

4.    Whether trial counsel was ineffective for failure to object at sentencing

      to the government's breach of the plea agreement.

The Fifth Circuit in its ruling of May 25, 2006, in granting partial relief, stated:

> "In view of *United States v. Herera*, 412 F.3d 577, 580-82 (5th Cir.
> 2005) the district court should have conducted an evidentiary hearing to
> determine whether his attorneys advised Handy that he would not
> receive more than 13 to 17 years of imprisonment and whether his
> attorneys advised Handy to deny that he received a promise of a specific
> sentence at the guilty-plea hearing. Accordingly, the district court's
> judgment is vacated and the case is remanded for an evidentiary hearing
> concerning these issues."

---

[5]*United States v. Handy*, No. 04-30108 (5th Cir. Aug 18, 2004) (unpublished).

[6]*United States v. Handy*, No.04-30108 (5th Cir. Oct. 27, 2004 (unpublished).

The evidentiary hearing is limited to the relief granted above.

## 2.    Statement of the Facts

As set forth in the factual basis executed by Handy, if the government had

tried this case, it would have presented the following evidence which Handy,

under oath, confirmed in open court at his March 21, 2001, rearraignment,

accurately reflected the events which transpired:

> In or about November 1998, the Drug Enforcement Administration
> (DEA) and the New Orleans Police Department (NOPD) 5th District
> began an investigation into the unlawful distribution of cocaine
> hydrochloride and cocaine base ("crack"), by a Drug Trafficking
> Organization headed by Harry C. Handy, a/k/a "Dubie" in violation
> of Title 21, United States Code, Section 846.

> Beginning June 26, 2000, the DEA conducted Court authorized
> electronic surveillance (Title III) on telephone number (504)231-4797
> for thirty days. This telephone was used by Brandon Smith.
> Beginning July 27, 2000, the DEA continued conducting a Title III on
> telephone number (504) 231-4797 until August 10, 2000. Beginning
> September 15, 2000, the DEA conducted a Title III on telephone
> number (504)220-6388 until September 27, 2000. This telephone
> was used by Harry C. Handy.

> During this time period, conversations were overheard in which Harry
> C. Handy, Brandon Smith, Damien Wilson, Terry Adams, Harry
> Heintz and Darren Hulbert, discussed the possession with intent to
> distribute and distribution of cocaine hydrochloride and cocaine base
> ("crack").

> On March 14, March 17, March 21, March 24, April 5, and April 12,
> 2000, Brandon Smith sold substances which field-tested positive for
> the presence of cocaine to a New Orleans Police Department (NOPD)

undercover officer. These sales by Smith were audio and video recorded. A chemist employed by the DEA South Central Laboratory determined that all substances were cocaine base ("crack") weighing a total of 67.8 grams with purities ranging from 36% to 57%.

On June 27, 2000, NOPD officers discovered a "crack" house at 1421 Benton Street, New Orleans, Louisiana. The officers recovered two packages of suspected "crack" cocaine from this location. The DEA chemist determined that these substances were cocaine base ("crack") weighing 50.8 grams with purities of 50% and 45%.

Smith received a telephone call at 10:54 p.m. on June 27, 2000, from an unknown male who told Smith that the police were in the abandoned house. Smith said his gun and "crack" were in the house. On June 27, 2000 at 11:21 p.m., Smith and Harry Handy had a telephone conversation wherein Handy asked Smith if the police were still at the abandoned house and what they had found. Smith told Handy "they found what they had to find," that is the "crack" cocaine. Smith also told Handy that he did not think they found "the toy" that is the gun.

On September 25, 2000, Handy bought one-half kilogram of cocaine hydrochloride from Darren Hulbert. Handy "cooked" the cocaine hydrochloride into "crack" cocaine at the residence of his sister Regina Handy, also known as Gigi, located at 1809 Feliciana Street, Apartment B, New Orleans, Louisiana.

After leaving 1809 Feliciana Street, Handy was chased by the police. Handy wrecked the car he was driving and ran to a house at 533 Tricou Street, New Orleans, Louisiana where he threw the "crack" cocaine into a bucket under the house. Officers recovered the "crack" cocaine.

A DEA chemist with the South Central Laboratory analyzed the substances seized by the police from under the house and determined that one package contained 198.1 grams of 56% pure cocaine base, and the second package contained 193 grams of 50% pure cocaine

10

base. Cocaine base, also referred to as "crack" cocaine is a Schedule II narcotic drug controlled substance.

Handy agrees that he and at least one other co-conspirator listed in the indictment reached an agreement to possess with the intent to distribute cocaine base ("crack") and cocaine hydrochloride. Handy agrees that he knew the unlawful purpose of the agreement and that he joined in the conspiracy willfully, that is, with the intent to further its unlawful purpose. Finally, Handy agrees that he was not merely present at the scene of the crime but actively furthered the object of the conspiracy with or without any financial gain.

The government and Harry C. Handy agree that the amount of cocaine hydrochloride attributable to Handy for the purpose of the cocaine hydrochloride conspiracy is 367.8 grams. The parties also agree that the amount of cocaine base ("crack") attributable to Harry Handy for the purpose of the cocaine base ("crack") conspiracy is 464.9 grams (amended from 509.7 grams).

See Factual Basis, Gov. Opp., Ex. F; Vol. 2, 9-10 (rearraignment transcript confirming that Handy understood and executed the factual basis and admitted the conspiracy and drug possession with intent to distribute).[7]

---

[7]Seven co-defendants, Brandon Smith, Damien M. Wilson, Darren Hulbert, Terry Adams, Harry Heintz, Regina Handy and Tarita Smith, also each signed a factual basis and entered guilty pleas on March 21, 2001. See Gov. Opp., Exs. G-M, O. Each was consistent with the factual basis signed by Handy that same day. See id. & Ex. F. On April 4, 2001, Eugene Thompson pleaded guilty and signed a factual basis and entered a guilty plea consistent with the factual basis signed by Handy. See id. Exs. N, F.

# **ARGUMENT**

## I.    **Standard of Proof**

In *U.S. v. Grant*, WL 2521337, *3 -4 (S.D.Tex.,2006) the court states the

often repeated standard to obtain collateral relief:

> "To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must
> clear a significantly higher hurdle" than the standard that would exist on
> direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). When a
> defendant has been convicted and his conviction has been upheld on direct
> appeal, there is a presumption that the defendant's conviction is fair and
> final. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir.1998). "As a
> result, review of convictions under section 2255 ordinarily is limited to
> questions of constitutional or jurisdictional magnitude, which may not be
> raised for the first time on collateral review without a showing of cause and
> prejudice." *Id.* Of course, this procedural bar does not apply to claims that
> could not have been raised on direct appeal, such as those for ineffective
> assistance of counsel. *See Massaro v. United States*, 538 U.S. 500 (2003)
> (holding that ineffective assistance claims are properly raised on collateral
> review and not procedurally barred by a failure to raise them on direct appeal).
> *4 The defendant proceeds *pro se* in this matter. A prisoner's *pro se*
> pleadings are reviewed under a less stringent standard than those drafted by
> attorneys and are entitled to a liberal construction that includes all
> reasonable inferences which can be drawn from them. *See Haines v. Kerner*,
> 404 U.S. 519 (1972). At the same time, however, prisoners proceeding pro
> se are still required to provide sufficient facts in support of their claims.
> *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir.1993). Even under the rule
> of liberal construction, "mere conclusory allegations on a critical issue are
> insufficient to raise a constitutional issue." *Id.* (citing *United States v.
> Woods*, 870 F.2d 285, 288 n. 3 (5th Cir.1989)); *see also Ross v. Estelle*, 694
> F.2d 1008, 1011 (5th Cir.1983) ("Absent evidence in the record, a court
> cannot consider a habeas petitioner's bald assertions on a critical issue in his
> pro se petition ⋯ to be of probative evidentiary value.")."

12

Additionally courts have stated with regularity the law regarding

inducement. In *U.S. v. Robinson*, WL 1806143, *10 -12 (S.D.Tex.,2006) the court states:

> In a related claim, Robinson contends that Newton was deficient because he made a "faulty" promise that if he entered a guilty plea immediately, then "the base offense level would be no more than 21," with a possible range of imprisonment of 77-96 months. Instead, Robinson's total offense level score was determined to be 23, with a range of imprisonment between 92-115 months. Thus, Robinson appears to claim that his guilty plea was induced by a "promise" by his counsel.
>
> To be constitutionally valid, a guilty plea must be knowing and voluntary. *See United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir.1998). It is well established that, as long as the defendant was fully aware of the direct consequences of his action, a guilty plea will stand unless it was improperly induced:
>
> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business ( *e.g.,* bribes). *Montoya v. Johnson,* 226 F.3d 399, 405 (5th Cir.2000) (quoting *Brady v. United States,* 397 U.S. 742, 755 (1970)), *cert. denied,* 532 U.S. 1067 (2001). For example, where a defendant can show that the court, the prosecutor, or defense counsel induced his guilty plea by "clearly and unequivocally *guaranteeing* a lesser sentence or some other specific leniency, the guilty plea is not voluntary unless the defendant receives that which he was promised." *Daniel v. Cockrell,* 283 F.3d 697, 703 (5th Cir.2002) (emphasis in original) (citing *United States v. Amaya,* 111 F.3d 386, 388-89 (5th Cir.1997) (holding that the district court's legally unfulfillable promise to impose sentence as though the government had moved for a downward departure rendered the defendant's guilty plea involuntary)). To make this showing, the defendant must demonstrate that an actual promise or guarantee was made by establishing: (1) the exact terms of the alleged guarantee; (2) exactly when, where and by whom the guarantee was made; and (3) the identity of any eyewitnesses to the

guarantee. *Daniel,* 283 F.3d at 703 (citing *De Ville v. Whitley,* 21 F.3d 654, 658 (5th Cir.1994)); *see also Cervantes,* 132 F.3d at 1110.

Under this analysis, the Fifth Circuit has made clear that "[a] guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence." *Daniel,* 283 F.3d at 703. "In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor, or defense counsel, the guilty plea stands." *Id.* (citing *Spinelli v. Collins,* 992 F.2d 559, 561-62 (5th Cir.1993) (defendant's mistaken belief that he would be eligible for parole after five years did not render his guilty plea involuntary because his misunderstanding did not result from promise by court, prosecutor or defense counsel)). "Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate *prediction* that a lesser sentence would be imposed." *Daniel,* 283 F.3d at 703-04 (emphasis in original) (citations omitted). *11.

The court goes on to state:

The assurances made by Robinson in open court during his plea colloquy are entitled to "great weight[.]" *United States v. Cothran,* 302 F.3d 279, 283-84 (5th Cir.2002). It is well recognized that the advantages of the plea bargaining system "can be secured ⋯ only if dispositions by guilty plea are accorded a great measure of finality." Montoya, 226 F.3d at 406 (quoting *Blackledge v. Allison,* 431 U.S. 63, 71 (1977)). "Thus, 'the representations of the defendant, his lawyer, and the prosecutor at [the original plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.' " *Montoya,* 226 F.3d at 406 (quoting *Blackledge,* 431 U.S. at 74) (alteration in original).

In a proceeding under 28 U.S.C. 2255, the court presumes that the

proceedings which led to the defendant's conviction were correct. See. *United*

*States v. Nelson*, 177 F.Supp. 2d 1181 (D. Kan. 2001) and *Twinning v. United States*, 321 F.2d 432 (5th Cir. 1963). The burden in on the applicant to establish by a preponderance of the evidence that relief is warranted.[8] The question of whether the applicant has carried his burden of proof must be determined by testimony at the hearing and not merely by the pleadings and affidavits.[9]

## II.  **ARGUMENT**

This court will not err in denying relief under 28 U.S.C. § 2255 when the totality of the record evidence conclusively negates all relevant contested factual issues, including whether Handy was instructed to lie during the plea colloquy as to his possible sentencing exposure, which he now claims was limited to 13 years.

This court will not err in concluding that the extensive record evidence before it, "including the Rearraignment Transcript, the Factual Basis, the plea agreement, the PSR and the co-defendants' pleas and factual bases," together with retained counsels' affidavits, and testimony did not support Handy's claim that he was instructed to lie during the plea colloquy, that he received assurances concerning sentencing enhancements or any other promises outside the plea

---

[8] *Wright V. U.S.*, 624 F.2d 557 (5th Cir. 1980).

[9] *Machibroda v. U.S.*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

agreement which he was told to deny under oath or that his plea otherwise was unknowing and involuntary. See Vol. 1, 49-50.

Handy has not claimed he is innocent of the crime to which he pleaded guilty. Rather, he has claimed that he was instructed to lie to the district court to cover up a guarantee by his counsel that he would receive a maximum sentence of 13 years and that his counsel contributed to the cover up by coaxing him to testify falsely during the plea colloquy. There is nothing to support this contention other than Handy's self-serving, after-the-fact testimony and affidavit.[10]

Handy's plea agreement made clear the maximum possible sentence, that any guideline estimate provided to Handy was not binding on the district court, and that there were no promises beyond those contained in the plea agreement. See Gov. Opp., Ex. B. It particularly stated:

> The defendant understands that any discussions with defendant's attorney or anyone else regarding sentencing guidelines are merely rough estimates and the Court is not bound by those discussions. The defendant additionally understands the Court could impose the

---

[10]See. United States v. Cothran, 302 F.3d 279, 284 (5th Cir. 2002) ("[W]e give the statements during the colloquy greater weight than we give unsupported, after- the-fact, self-serving revisions.").

16

maximum term of imprisonment and fine allowed by law, including
the imposition of supervised release....The defendant understands that
the statements set forth above represent defendant's entire agreement
with the Government; there are not any other agreements, letters, or
notations that will affect this agreement.

Id. at 3-4.

More significantly, Handy's extensive plea colloquy belies his claim that he

was directed by defense counsel to deceive the district court as to his

understanding of his sentencing exposure, to falsely deny that any promises

existed outside the plea agreement or to falsely deny that the district court was the

sole arbiter of sentencing.  This evidence is the critical lynchpin which Handy

cannot overcome unless Handy credibly convinces this court that he had been

prepped by defense counsel to lie to the district court as to these issues:

> 9.  Mr. Stoutz informed me that the Judge was going to asked
> (sic) me a lot of questions before the Court would accept my plea.
> Mr. Stoutz informed me that he would guide me though the questions,
> he told me to tell the Judge there were 'no promises, no deals, I had
> read the plea agreement, factual basis, and I knew the maximum
> penalty could be up to life.'  I asked Mr. Stoutz why I couldn't tell the
> Judge that I had a 13 year deal and he told me that this is the federal
> system and things don't' work that way and if I did that I'd screw up
> everything and lose my deal.  Mr. Stoutz told me to trust him on this
> and I did.
>
> 10.  During the Rule 11 guilty plea proceeding Mr. Stoutz
> made sure that I answered the Court's questions correctly, the way he

17

<u>told me to.</u> I didn't want to screw up my 13 year deal."

Harry Handy's Affidavit, Exhibit 2, Vol. 1, 153 (emphasis added).

    As the record shows, this court queried Handy three times to determine if Handy understood the maximum sentence he faced and four times as to his understanding that no one had told him or promised him what his sentence was going to be. The record reveals no attempt by defense counsel to lead or otherwise direct Handy's answers but a thorough colloquy negating all issues Handy attempts to resurrect:

| | |
|---|---|
| THE COURT: | Mr. Handy, do you understand all answers given under oath in open court if it is later shown to be untruthful, that could be a basis of a perjury or false statement prosecution. Do you understand that, sir? |
| THE DEFENDANT: | Yes, sir. |
| | *   *   * |
| THE COURT: | If you are convicted on that charge either on a plea of guilty or after trial, <u>the maximum possible sentence that could be imposed on you is life imprisonment</u> with a mandatory minimum term of ten years, a fine of four million dollars, plus at least five years of supervised release, a mandatory assessment fee of $100. |

18

|                    | That is the maximum penalties and fine on the crime to which you seeking to plead guilty, <u>do you understand that</u>? |
|--------------------|-------------------------------------------------------------------------------|
| THE DEFENDANT:     | <u>Yes, sir.</u>                                                              |
|                    | *   *   *                                                                     |
| THE COURT:         | Now, <u>do you understand, sir, that I could impose the maximum possible sentence</u> and fine on the crime to which you are seeking to plead guilty? Do you understand that, sir? |
| THE DEFENDANT:     | <u>Yes, sir.</u>                                                              |
| THE COURT:         | <u>Do you understand that?</u>                                               |
| THE DEFENDANT:     | <u>Yes, sir.</u>                                                              |
| THE COURT:         | Have you and your lawyer discussed the sentencing guidelines, do you understand there is such a thing? |
| THE DEFENDANT:     | <u>Yes, sir.</u>                                                              |
| THE COURT:         | Do you understand that I am not necessarily bound by those guidelines, if I find the guidelines don't take into account something about you or the crime to which you are seeking to plead guilty, <u>I might choose to sentence you to a sentence either greater or less that the guidelines; do you understand that, sir</u>? |
| THE DEFENDANT:     | <u>Yes, sir.</u>                                                              |
| THE COURT:         | <u>Understanding that</u>, how do you plead as to Count One of the superseding indictment, guilty or not guilty? |
| THE DEFENDANT:     | Guilty.                                                                       |
|                    | *   *   *                                                                     |

19

| | |
|---|---|
| THE COURT: | Has anyone made <u>any promise other than what is contained in the plea agreement to get you to plead guilty</u>? |
| THE DEFENDANT: | <u>No, your Honor.</u> |
| THE COURT: | Anyone threatened or forced you to plead guilty? |
| THE DEFENDANT: | <u>No, your Honor.</u> |
| THE COURT: | Anyone connected with any law enforcement agency, <u>anyone else made any promises to you about what your sentence is going to be</u>? |
| THE DEFENDANT: | <u>No.</u> |
| THE COURT: | <u>Did anyone promise what your sentence was going to be</u>? |
| THE DEFENDANT: | <u>No, sir.</u> |
| THE COURT: | <u>No one has told you, haven't said, Mr. Handy, here is what you sentence is going to be</u>? |
| THE DEFENDANT: | <u>They haven't promised that.</u> |
| THE COURT: | <u>You don't know what your sentence is going to be; is that correct</u>? |
| THE DEFENDANT: | <u>That's correct.</u> |

Vol. 2, 3-9 (emphasis added).

This court not only heard the plea colloquy, it observed Handy's demeanor during and concluded the plea was "voluntary and knowledgeable and has a basis in fact," Vol. 2, 10. This court also previously determined that there was no record evidence to support Handy's after-the-fact, self-serving § 2255 allegations to the contrary. Vol. 1, 31; Vol. 2, 1. The court in its opinion observed that Handy failed

to seek withdrawal of his plea in the almost four months following rearraignment

or the more than two months prior to sentencing but following issuance of the

PSIR, made only a brief reference to withdrawal at sentencing and failed to

support the request with reasons or any form of motion.  See *United States v.*

*Handy*, No. 01-30884 (5th Cir. Nov. 13, 2002), Vol. 1, 187-88.[11]  The court also

had the benefit of Handy's various other improbable § 2255 allegations including,

despite all evidence to the contrary, that he did not drive the vehicle in which he

recklessly endangered numerous lives in a high-speed chase to avoid

apprehension.  See Vol. 1, 143-44; Gov. Opp. Ex. J, page 2-3 where Handy states,

"Man they had about six cars behind me." Having reviewed Handy's actions,

demeanor and statements over the course of this case, this court is in the best

position to judge the credibility of Handy's § 2255 assertions to date.

   Further, although a couple of Handy's co-defendants supplied after-the-fact

affidavits to further Handy's efforts to get out of jail, not one of them attests that

---

[11]See also *Badger*, 925 F.2d at 104 (district court correctly denied motion to withdraw
guilty pleas when defendant did not seek withdrawal until the day of sentencing although more
than six weeks had passed since rearraignment on one charge and nearly three weeks had passed
since rearraignment on another).

they heard Handy's counsel instruct Handy to lie under oath during the plea

colloquy.  <u>See</u> Vol. 1, 155-56.  Not one attests that they heard counsel instruct

Handy to lie under oath as to his maximum sentencing exposure.  Not one attests

that they heard counsel instruct Handy to deny under oath his understanding that

the district court was the final arbiter of his sentence.  Not one attests that they

heard counsel instruct Handy to lie under oath as to any alleged promises by

counsel as to the sentence he would receive.  As such issues would have been

pertinent to their own plea proceedings, it is reasonable to infer these defendants

would have recalled such discussions had they occurred, particularly in view of

the specificity in which the co-defendants state their other recollections and their

asserted proximity to the conversation at issue.

　　　Nor, to date, has defense counsel affirmed these allegations, unlike such

cases as *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004), in which defense

counsel freely conceded a fundamental and grave misunderstanding of the

sentencing guidelines and ineffectiveness in the plea process.   <u>See</u> *Grammas*, 376

F.3d at 436-47; Gov. Opp., Exs. P-Q.

At their core, Handy's complaints indicate he simply is dissatisfied with the length of the sentence imposed. An inmate's dissatisfaction with his sentence does not render his plea involuntary. e.g., *United States v. Rodriguez*, 62 F.3d 723, 725 (5th Cir. 1995) ("Rodriguez asserts that the district court erred in denying his post-sentence motion to withdraw his plea, a motion obviously based on the fact that he did not receive the sentence which he had hoped to receive. The court's refusal to follow the plea agreement neither denied Rodriguez due process nor breached the plea agreement. An attitudinal change after learning the consequences of one's plea is not a sufficient basis to justify the withdrawal of the plea after sentencing.") (footnotes omitted).

Handy has not asserted his innocence, nor is there any evidence in the record to suggest Handy had any hope of prevailing at trial. Rather, the record contains strong evidence against Handy. Regardless of any alleged statement by Handy's counsel, Handy would still have faced nine co-defendants' factual bases, plea agreements, taped drug conversations to which Handy was a party and other evidence outlined in the factual bases. See Gov. Opp., Exs. G-O. As of the trial

date of March 26, 2001, eight co-defendants already had entered plea agreements and signed factual bases consistent with the one that Handy had signed which not only inculpated Handy, but (1) placed Handy at the center of the drug conspiracy; (2) established Handy's use of a dangerous weapon in commission of the offense; and (3) established Handy's reckless flight from police. See Gov. Opp., Exs. G-M, O.[12]

The evidence in the factual bases was found by this court to be more than sufficient to justify the sentence enhancements recommended in the PSIR. Vol. 1, 44. The record does not suggest that any of these co-defendants would admit perjury by recanting their sworn statements inculpating Handy as to each of the three two level enhancements Handy received, with the sole exception of Brandon Smith who contended that the word "toy" did not refer to a gun and Harry Heintz who filed an unsuccessful § 2255 petition claiming he did not conspire with Harry Handy for a drug amount in excess of 5 kilograms of cocaine hydrochloride or

---

[12]Shortly thereafter, a ninth co-defendant pleaded guilty and entered a similar factual basis inculpating Handy. See Gov. Opp., Ex. N.

more than 50 grams of cocaine base, "crack".[13]  Accordingly, there is no

reasonable probability that but for counsels' actions, Handy would have proceeded

to trial and succeeded either on the merits or in obtaining a reduced sentence.

Further, if Handy had been permitted to withdraw his plea agreement and

proceed to trial, the government would have sought a mandatory minimum

sentence under 21 U.S.C. § 851.  Handy would have lost the benefit of three points

for acceptance of responsibility.  On conviction, Handy would have faced an

offense level of 40 and a Criminal History Category III.  His sentencing guideline

range would have been 360 months to life imprisonment with a mandatory

minimum sentence of twenty years.  The district court's justification for imposing

the maximum sentence "based on your criminal history, including repetitive drug

trafficking crimes and violent tendencies" would have remained equally

---

[13]Co-defendant Brandon Smith has contended in an unsuccessful § 2255 filing that the reference to the "toy" in his factual basis was not a reference to a gun; this court denied a COA on August 12, 2004, in that case. See *United Smith v. Smith*, No. 04-30097 (5th Cir. Aug. 12, 2004), petition for cert. filed, Nov. 22, 2004.  The district court denied Handy a COA on this issue.  Co-defendant Harry Heintz has contended in an unsuccessful § 2255 filing that he did not conspire with Harry Handy for the total amount of drugs reflected in the Superseding Bill of Information. There is no other indication that any co-defendant is challenging their factual bases.

25

applicable, resulting in a likely sentence of life imprisonment rather than the 27.25 years Handy received pursuant to the plea agreement. See Vol. 3, 5.

## CONCLUSION

For the foregoing reasons, the government respectfully requests, after hearing, that the Court deny Harry Handy the requested relief under 28 U.S.C. § 2255.

Respectfully submitted,

JIM LETTEN
UNITED STATES ATTORNEY


TONY GORDON SANDERS, Bar #11705
Assistant U.S. Attorney
Hale Boggs Federal Building
500 Poydras Street, Room 210-B
New Orleans, LA 70130
Tel. (504) 680-3167

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon counsel of record for the Defendant via facsimile and by placement in the United States Mail, postage prepaid and properly addressed, this 8th day of November, 2006.

TONY GORDON SANDERS
Assistant U.S. Attorney