UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. 00-319 |
| v. | * | SECTION: "D" |
| HARRY C. HANDY | * | |
| | * * * | |

## GOVERNMENT'S RESPONSE MEMORANDUM
## TO POST HEARING MEMORANDUM IN SUPPORT OF
## PETITIONER'S MOTION TO WITHDRAW GUILTY PLEA.

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits this Response Memorandum Brief pursuant to this Court's briefing notice[1].

## STATEMENT OF THE CASE

On March 21, 2001, defendant-appellant Harry Handy ("Handy") pleaded guilty to one count of a multi-count, multi-defendant superseding indictment charging him with conspiracy to distribute more than five kilograms of cocaine and more than 50 grams of cocaine base ("crack").

---

[1] The Government reurges its argument and legal citations in support contained in its Pre Hearing Memorandum Brief.

<u>See</u> Volume ("Vol.") 2 (transcript of rearraignment);[2] Vol. 1, 293-303 (superseding indictment).

At rearraignment, this  court advised Handy of the mandatory minimum and maximum penalties

he faced, that this court could impose the maximum sentence, and that only this court had the

power to determine Handy's sentence.  *See* Vol. 2, 6-10.  As detailed in the Rearraignment

Transcript, Handy repeatedly affirmed his understanding of these facts.

Handy's plea was pursuant to a written plea agreement with the government which

informed Handy that the maximum sentence to which he could be exposed was life in prison.

<u>See</u> Vol. 1, 263; Govt. Ex. B, p. 1.  In the agreement, Handy attested that he understood the

maximum and minimum penalties and that any discussions concerning the sentencing guidelines

were "merely rough estimates and the Court is not bound by those discussions."  Vol. I,  263,

265; Govt. Ex. B p. 3.

On June 19, 2001, Trial Counsel, Harry Boyer, (hereinafter "Boyer") assisted by Clifton

Stoutz, (hereinafter "Stoutz")[3] secured a court order continuing Handy's sentencing from

---

[2]All cites to the record are by Volume ("Vol.") followed by the page number except for
the evidentiary transcript which is referred to as (Transcript) and Government Exhibits
introduced at the evidentiary hearing, which are referred to as ("Gov. Ex.") and references to the
exhibits attached to the Government's Opposition to Motion under § 2255 are referred to "Gov.
Opp."  The government's opposition was filed under seal in this court and it remains under seal
because it references and includes as an attachment a co-defendant's PSR. As record page
numbers are not available for these sealed materials, the government will refer to the internal
pagination and exhibit numbers.

[3]Court records indicate Stoutz was standing in for Boyer at the arraignment on the initial
indictment, Vol. 1, 313, although Boyer appeared on behalf of Handy at his initial appearance,

June 20, 2001, to July 11, 2001, to allow counsel additional time to file objections to the

Presentence Investigation Report ("PSR").  Vol. 1, 243.  Trial counsel filed seventeen objections

and succeeded in convincing the United States Probation Office that the proper offense level

should be 34 rather than 36 because there was insufficient evidence linking Handy to 67.8 grams

of crack.  *See* PSR Supplemental Addendum, Govt. Ex. J, pp 20-36.  This resulted in a reduction

in Handy's sentencing range from 324 to 405 months, to 262 to 327 months.  The reporting

officer made detailed findings as to his rejection of Handy's remaining objections and the PSR's

recommendation of two-level increases for use of a dangerous weapon, aggravating role and

reckless endangerment.  *See* PSR, p. 14; PSR Supplemental Addendum, pp. 30-35.

On July 11, 2001, this court sentenced Handy to the maximum of 327 months (27.25

years) incarceration.  *See* Vol. 3 (sentencing transcript). This court explained that it imposed the

maximum sentence "based on your criminal history, including repetitive drug trafficking crimes

and violent tendencies."  *Id.* at 5.  Count 1 of the original indictment was dismissed pursuant to

the plea agreement.  *Id.* at  6.  The government, pursuant to the plea agreement, did not seek any

enhancement as provided in 21 U.S.C. § 851 which would have enhanced the minimum sentence

to 20 years.  *See generally id.* Govt. Ex. B, p. 1.

At allocution, Handy stated that he wished "to take my plea back"  but gave no reasons

and made no other effort to withdraw his guilty plea.  *See* Vol. 3, 4.

---

detention hearing and arraignment on the superseding indictment.  *Id.* at 281, 324-27.  Boyer is
listed as working for Frank DeSalvo, APLC on an initial motion, *id.* at 274-75, but Stoutz was
enrolled as co-counsel as of the date of rearraignment.  *Id.* at 268-69. The weight of the record
indicates Boyer was Handy's chief attorney throughout the proceedings and is the one who
negotiated the deal leading to the plea agreement. Transcript p. 15, line 20; p. 113, line 21-22.

Handy appealed his conviction based on the plea colloquy, contending the district court erred by failing to advise that his right to trial included the right to a "jury" trial, which the Fifth Circuit rejected. *United States v. Handy*, No. 01-30884 (5th Cir. Nov. 13, 2002), Vol. 1, 185-88. Significantly, Handy also contended that he should have been permitted to withdraw his guilty plea based on his dissatisfaction with his sentence, which the Fifth Circuit found highly improbable:

> Handy has filed a supplemental brief on appeal arguing for the first time that the district court's denial of his oral motion to withdraw his guilty plea requires reversal. The district court did not abuse its discretion in denying Handy's last-minute pro se request to withdraw his guilty plea (made near the conclusion of the sentencing hearing and over three and a half months after the plea had been accepted) because Handy did not properly support the motion by asserting any fair and just reason for withdrawing his guilty plea.... As for the contention in the supplemental brief that Handy (who was represented by counsel throughout) was not given an opportunity to state reasons for his motion, neither he nor his counsel ever sought or attempted to state any reasons or ever requested to be allowed to do so, or requested a hearing or an opportunity to confer or the like, or made any objection to the court's ruling on any such ground (or indeed on any ground). All contentions respecting withdrawal of the plea were raised for the first time in the supplemental brief on appeal. Nowhere in that brief, nor anywhere in the record, is there any suggestion of any reason why or on what basis withdrawal of the plea was sought or should have been allowed or what would or could be shown in that respect if the case were remanded; indeed the record indicates it is highly improbable that there could be any fair and just reason to withdraw the plea. We conclude that the contentions respecting Handy not being afforded any opportunity to state reasons are governed by Fed. R. Crim. P. 52(b), that no prejudice has been shown and that reversal is not called for.

Vol. 1, 187-88 (emphasis added).

Handy sought to revisit this issue and raised numerous other claims in a § 2255 petition filed in July 2003. Vol. 1, 98-167. Four months later, following the filing of the government's response, Handy moved for an evidentiary hearing. Vol. 1, 82-87. This court denied these

motions. *See* Vol. 1, 31-57. In particular, this court concluded that the record evidence and

particularly "the court's Rule 11 colloquy with Handy, the written and signed Plea Agreement,

the Factual Basis and the Affidavits of his retained counsel" warranted rejection of Handy's

claim that his counsel was ineffective or that his plea was involuntary. *Id.* at 41-43. This court

also concluded that "based on the record (including the Rearraignment Transcript, the plea

agreement, Handy's signed factual basis, and the Factual Bases of Handy's co-Defendants),

appellate counsel could not have objectively concluded that an appeal to the Rule 11 colloquy

would have been successful, as any alleged variance from Rule 11 could not have been

reasonably viewed as a material factor affecting Handy's decision to plead guilty." Id. at 47-48.

Further:

> At the sentencing hearing, Handy told the court that he wanted to take his plea
> back. (Sentencing TR. at 4). The contemporaneous court record shows that
> Handy voluntarily, knowingly, and intelligently entered his guilty plea. The court
> did not allow Handy to withdraw his plea because there was no fair and just
> reason for the withdrawal.
>
> Handy was on notice as a result of the court's Rule 11 colloquy of his actual
> exposure to his sentence. Handy does not claim that he is actually innocent or that
> his plea would have been successfully-withdrawn, had his counsel filed a motion
> to withdraw his plea. "Unfulfilled expectations of a deal for a lighter sentence do
> not constitute a fair and just reason for allowing withdrawal of a guilty plea."
> United States v. Badger, 925 F.2d 101, 104 (5th Cir. 1991). Thus, Handy cannot
> show "prejudice" because he cannot establish that there is a reasonable probability
> that but for the failure of his counsel to file the alleged requested motion, the
> result of the proceeding would have been different.

Vol. 1, 48-49.

This court concluded that the record, "including the Rearraignment Transcript, the

Factual Basis, the plea agreement, the PSR and the co-defendants' pleas and factual bases,"

together with retained counsels' affidavits,[4] did not support Handy's claim that he was instructed to lie during the plea colloquy, that he received any assurances concerning sentencing enhancements or that his plea otherwise was unknowing and involuntary.  Id. at 49-50.

This court also rejected Handy's contention that the government "breached the plea agreement by failing to provide petitioner with an opportunity to cooperate and receive a downward departure for substantial assistance."  Id. at 50.  This court observed that Handy's plea agreement created no obligation on the part of the government to file a motion based on substantial assistance.  Id.  This court noted that Handy did receive a promise by the government not to seek a 28 U.S.C. § 851 enhancement and benefitted from three points for acceptance of responsibility.  Id. at 50-51.  "Loss of these benefits alone would have exposed Handy to a mandatory mini[m]um of 20 years and would have raised his total offense level to 40, exposing him to a sentencing range of 360 months to life."  Id. at 51.

---

[4]Handy attached an alleged prior affidavit from co-counsel Stoutz, but Stoutz indicated the prior affidavit was not legitimate as it was not notarized, and although Stoutz had prepared a prior affidavit in relation to Handy's plea, that affidavit "mirror[ed] the facts stated in this affidavit."  Stoutz Affidavit at ¶ 7, Govt. Ex. Q.

The Fifth Circuit granted Harry Handy a COA[5] on the following issues:

1.    Whether trial counsel was ineffective by promising falsely that he would be sentenced to no more than 13 years in prison if he pleaded guilty.

2.    Whether his attorneys' false promises made his guilty plea unknowing and involuntary.

3.    Whether the district court should have convened an evidentiary hearing on these issues.

Handy sought reconsideration, and the Fifth Circuit granted an additional COA[6] on the issue of:

4.     Whether trial counsel was ineffective for failure to object at sentencing to the government's breach of the plea agreement.

The Fifth Circuit in its ruling of May 25, 2006, in granting partial relief, stated:

> "In view of *United States v. Herera*, 412 F.3d 577, 580-82 (5th Cir. 2005) the district court should have conducted an evidentiary hearing to determine whether his attorneys advised Handy that he would not receive more than 13 to 17 years of imprisonment and whether his attorneys advised Handy to deny that he received a promise of a specific sentence at the guilty-plea hearing. Accordingly, the district court's judgment is vacated and the case is remanded for an evidentiary hearing concerning these issues."

The matter was remanded for an evidentiary hearing limited to the relief granted above which was held on December 7, 2006. At the hearing Handy testified on his own behalf and he called in his case in chief his former attorneys Clifton Stoutz and Harry Boyer. There was

---

[5]*United States v. Handy*, No. 04-30108 (5th Cir. Aug 18, 2004) (unpublished).

[6]*United States v. Handy*, No.04-30108 (5th Cir. Oct. 27, 2004 (unpublished).

7

additional stipulated testimony from Pre-Trial services that Handy, if he had gone to trial and

been convicted would have been sentenced consistent with the drug quantity and enhancements

in the PSR. Transcript p. 146, line 22 through p. 147, line 11. And both parties stipulated that the

transcript of a January 1, 2004, jailhouse, telephone conversation between Handy and Stoutz was

accurate as to its legible parts. Transcript, p. 79, line 23 through p. 80 line 13.

1.    **Statement of the Facts**

As set forth in the factual basis executed by Handy, if the government had tried this case,

it would have presented the following evidence which Handy, under oath, confirmed in open

court at his March 21, 2001, rearraignment, accurately reflected the events which transpired:

> In or about November 1998, the Drug Enforcement Administration (DEA) and the New Orleans Police Department (NOPD) 5th District began an investigation into the unlawful distribution of cocaine hydrochloride and cocaine base ("crack"), by a Drug Trafficking Organization headed by Harry C. Handy, a/k/a "Dubie" in violation of Title 21, United States Code, Section 846.
>
> Beginning June 26, 2000, the DEA conducted Court authorized electronic surveillance (Title III) on telephone number (504)231-4797 for thirty days. This telephone was used by Brandon Smith. Beginning July 27, 2000, the DEA continued conducting a Title III on telephone number (504) 231-4797 until August 10, 2000. Beginning September 15, 2000, the DEA conducted a Title III on telephone number (504)220-6388 until September 27, 2000. This telephone was used by Harry C. Handy.
>
> During this time period, conversations were overheard in which Harry C. Handy, Brandon Smith, Damien Wilson, Terry Adams, Harry Heintz and Darren Hulbert, discussed the possession with intent to distribute and distribution of cocaine hydrochloride and cocaine base ("crack").
>
> On March 14, March 17, March 21, March 24, April 5, and April 12, 2000, Brandon Smith sold substances which field-tested positive for the presence of cocaine to a New Orleans Police Department (NOPD) undercover officer. These sales by Smith were audio and video recorded. A chemist employed by the DEA South Central Laboratory determined that all substances were cocaine base ("crack") weighing a total of 67.8 grams with purities ranging from 36% to 57%.
>
> On June 27, 2000, NOPD officers discovered a "crack" house at 1421 Benton Street, New

8

Orleans, Louisiana.  The officers recovered two packages of suspected "crack" cocaine from this location.  The DEA chemist determined that these substances were cocaine base ("crack") weighing 50.8 grams with purities of 50% and 45%.

Smith received a telephone call at 10:54 p.m. on June 27, 2000, from an unknown male who told Smith that the police were in the abandoned house.  Smith said his gun and "crack" were in the house.  On June 27, 2000 at 11:21 p.m., Smith and Harry Handy had a telephone conversation wherein Handy asked Smith if the police were still at the abandoned house and what they had found.  Smith told Handy "they found what they had to find," that is the "crack" cocaine.  Smith also told Handy that he did not think they found "the toy" that is the gun.

On September 25, 2000, Handy bought one-half kilogram of cocaine hydrochloride from Darren Hulbert.  Handy "cooked" the cocaine hydrochloride into "crack" cocaine at the residence of his sister Regina Handy, also known as Gigi, located at 1809 Feliciana Street, Apartment B, New Orleans, Louisiana.

After leaving 1809 Feliciana Street, Handy was chased by the police.  Handy wrecked the car he was driving and ran to a house at 533 Tricou Street, New Orleans, Louisiana where he threw the "crack" cocaine into a bucket under the house.  Officers recovered the "crack" cocaine.

A DEA chemist with the South Central Laboratory analyzed the  substances seized by the police from under the house and determined that one package contained 198.1 grams of 56% pure cocaine base, and the second package contained 193 grams of 50% pure cocaine base.  Cocaine base, also referred to as "crack" cocaine is a Schedule II narcotic drug controlled substance.

Handy agrees that he and at least one other co-conspirator listed in  the indictment reached an agreement to possess with the intent to distribute cocaine base ("crack") and cocaine hydrochloride.  Handy agrees that he knew the unlawful purpose of the agreement and that he joined in the conspiracy willfully, that is, with the intent to further its unlawful purpose.  Finally, Handy agrees that he was not merely present at the scene of the crime but actively furthered the object of the conspiracy with or without any financial gain.

The government and Harry C. Handy agree that the amount of cocaine hydrochloride attributable to Handy for the purpose of the cocaine hydrochloride conspiracy is 367.8 grams.  The parties also agree that the amount of cocaine base ("crack") attributable to Harry Handy for the purpose of the cocaine base ("crack") conspiracy is 464.9 grams (amended from 509.7 grams).

*See* Factual Basis, Gov. Opp., Ex. F; Vol. 2, 9-10 (rearraignment transcript confirming that

Handy understood and executed the factual basis and admitted the conspiracy and drug

possession with intent to distribute).[7]

## LAW AND ARGUMENT

The Government's position on the law applicable to this case has been stated in numerous

memoranda and briefs filed by the Government and will not be repeated in detail here.

In summary, the defendant has the burden of proof that:

> **In the context of sentencing, the movant must demonstrate a reasonable probability that, but for counsels' errors with respect to sentencing matters, he would received less time in prison. *See United States v. Grammas,* 376 F.3d 433, 438 (5th Cir.2004); *Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).**

*See, United States v. Blount,* 159 Fed.Appx. 591, *592, 2005 WL 3588440, **1 (C.A.5 (La.

(C.A.5 (La.),2005).

Additionally:

> While Taylor's attorney might have also mis-advised him about his true exposure under the plea agreement,[FN6] the petitioner was not prejudiced inasmuch as there is no argument that he was sentenced to a greater amount of time because of that mistake. To establish prejudice, Taylor would have to show that if his attorney had properly advised him of his probable sentence under the plea, he would have gone to trial instead, and that he would have either been acquitted or, if convicted at trial, that this Court would have sentenced him to less than 151 months in prison. Taylor, however, makes no argument that he is actually innocent or that a conviction would have been unlikely at trial for other reasons, such as for lack of evidence. Additionally, there is no indication that this Court

---

[7]Seven co-defendants, Brandon Smith, Damien M. Wilson, Darren Hulbert, Terry Adams, Harry Heintz, Regina Handy and Tarita Smith, also each signed a factual basis and entered guilty pleas on March 21, 2001. *See* Gov. Opp., Exs. G-M, O. Each was consistent with the factual basis signed by Handy that same day. *See id.* & Ex. F. On April 4, 2001, Eugene Thompson pleaded guilty, signed a factual basis, and entered a guilty plea consistent with the factual basis signed by Handy. *See id.* Exs. N, F.

would have sentenced him more leniently upon a conviction at trial. The petitioner's claim that he received ineffective assistance of counsel is without merit.

> FN6. Of course, that fact has not been established, but for purposes of this ruling we are assuming that the petitioner's counsel did make such a statement.

*See United States v. Taylor*, 2005 WL 3370624, *3 (S.D. Miss.,2005), (Not reported in F. Supp.2d), where Taylor claimed that his attorney "tricked" him by telling him that he would be sentenced to only 41 months after pleading guilty, and that he was "astonished" when he was actually sentenced to 151 months.

### Handy Presented No Evidence Showing Actual Innocence
### Or That He Might Reasonably Prevail at Trial and Be Acquitted

Handy failed at the evidentiary hearing to satisfy his burden of proof. Nowhere in the pleading, affidavits or testimony is there one iota of evidence that Handy is actually innocent or that he would have prevailed at trial. To the contrary, the following testimony was adduced indicating that an individual in Handy's predicament would have pled guilty to avoid a sentence range of 360 months to life. Handy stated during his direct testimony his attorneys received the superceding indictment and he was advised that the case against him was compelling and that he would not prevail at trial. Transcript, p. 150, line 17-23; Transcript, p. 141 through p. 142 line 2. At no time during his testimony does Handy refute acknowledging their advice as to overwhelming evidence of his guilt or indicate that he wanted to go to trial. Stoutz testified, that in reviewing the discovery, he repeatedly heard Handy actually use the word crack in his telephone conversations about his drug deals. Transcript, p. 42, lines 17-25. Additionally, numerous co-defendants also entered similar pleas of guilty. *See* Footnote 7. Finally, Stoutz, as both he and Boyer testified they had earlier, reinformed Handy, during his telephone

conversation on January 1, 2004 that he could have ended up with life. Government Exhibit V.

p. 7.

### Handy Did Not Establish Prejudice Because He
### Presented No Evidence Indicating That this Court Would
### <u>Have Sentenced Him More Leniently upon a Conviction at Trial</u>

Nowhere in the pleadings, affidavits or testimony is their one iota of evidence that Handy

would have been sentenced more leniently upon a conviction at trial. To the contrary, both his

counsels testified that if he went to trial he was looking at life.  Transcript p. 26, line 21 through

p. 27, line 6.   Based on indicted drug amount, the original PSR amount or even the revised PSR

amount, if Handy would have been convicted at trial, with the enhancements found by this Court,

his Guidelines Sentence range would have been 360 months to life because he would have

equaled or exceeded Level 40.  *See* Stipulation of Counsel. Transcript p. 146, line 22 through p.

147, line 11.

### Handy Did Not Establish Prejudice Because He Did Not
### Show That If His Attorney Had Properly Advised Him Of His
### <u>Probable Sentence under the Plea, He Would Have Gone to Trial Instead.</u>

Handy has always falsely claimed that he would have gone to trial if he had known that

he was exposed to a maximum sentence of life or that his guideline sentence could have been 27[8]

years, depending on which version of the story he last posits. A review of his pleadings and

affidavit shows it varies from either he was promised a 13-year sentence locked in or a range that

---

[8] The Government in its Pre Hearing Memorandum Brief stated its position on the standard of proof.  It is not restated in this memo.

12

capped at 13 years. Later in his telephone conversation with Stoutz, he states it really was 15 to

17 years.  Government Exhibit V. p. 3.  Handy's pleadings and affidavits, if true, put him in that

rarefied air of a successful §2255 action. But his statements have to be absolutely true.  He could

not admit reading, to being read, or understanding the terms of the plea agreement, but, he had to

explain his signatures on both the factual basis and the plea agreement.  He could not admit to

telling the truth at the Rule 11 colloquy, but he had to otherwise explain his answers as lies and

to be held not responsible for those lies, he had to blame his lawyer for those lies. He could not

admit that either of his attorneys explained his potential sentence at plea to be life, or at least a

sentence approaching the one he actually received. And finally, he needed to latch on to Stoutz's

unfamiliarity with the federal system and choose him as the attorney he relied on instead of

Boyer.

　　　His perfectly set up claims are belied by the record.  Handy slipped up several times in his

testimony, revealing the extent of his lying.[9]  Most telling is Handy's testimony on cross

examination:

Q.　　All right Mr. Handy, isn't it true that you don't remember exactly what you were told, you
　　　just remember the number 13 and that's what you've fixed on this whole time?

---

　　　[9] Handy testified that he had read the facts in his pleadings and affidavits and they were
accurate.  Transcript, p. 161 , line 12, through p. 162, line 3. However, prior to his testimony,
Handy claimed in his sworn affidavit that after he got his 13 year deal from Boyer, Boyer left the
jail. Handy got worried, so he tried to call Boyer several times and left a message that he wanted
the 13-year deal in writing. Government Exhibit G. Par. 4. At the hearing, Handy denied every
asking or calling to ask for the 13-year deal to be put into writing. Transcript, p. 162, line 12
through p. 165, line 6.  This was attributed to the "dude" who was helping him with his pleading.
Transcript, p. 164, line 21-22. In paragraph 13 of his affidavit (Govt. Ex. G.) Handy claims he
made a three way call to Boyer and demanded Boyer file a motion to withdraw Handy's plea.  At
trial, Handy testified that he never asked Boyer to withdraw his guilty plea. Transcript, p. 154,
lines 25 through p. 155, line 8.

A.    I remember exactly what I was told, 135 months to 168.  I was pleading out to a level 34, go up three spots, and that's my range. He didn't tell me nothing about no enhancements or nothing else. That's what I understood. That's what I was told. **That's why we fixed it in court because if we wouldn't have fixed it, it would have been a level 36.** (Emphasis supplied).

This reference to level 36, obviously deals with drug quantity, If Handy knew his range was 135 months to 168 months, as he testified to, he was aware that the calculation was done with a Criminal History of III.  If, as he testified to, he was aware of his exposure at level 36, at the higher drug amount, he also knew the sentencing range (at III) if he went to trial, without any enhancement, if he was found guilty, would have been 235-293 months (max 24.4 years). He also would have known if he "went up three spots" with acceptance of responsibility, again without any enhancement, he would have a sentencing guideline range at level 33 of 168-210 months (max 17.5 years).  Handy's unintended acknowledgment of the level of his sentencing sophistication slipped out of his mouth during a fit of frustration.  Markedly, this range was the range, Handy admitted that Boyer advised him of in his telephone conversation with Stoutz on January 1, 2004.  Government Exhibit V, p.3-4.  This sentencing range contradicts everything Handy has filed.

Handy couldn't even get his story straight on this 15 to 17 year statement.  When asked on cross about the 15 to 17 year range reference in the telephone conversation he had with Stoutz in 2004,  Handy stated on two different occasions that he was referring to Boyer's lying in the affidavit (Government Exhibit P) Boyer had filed with the Court.  Transcript, p. 178, lines 3-20; and again at p. 182 lines 18 through 183, line 4.

However, when further pressed on cross examination, Handy had to admit that no such reference appears in Boyer's affidavit.  Transcript, p. 183, lines 5-22. Then Handy incredulously

explains this problem as a typo mistake.  Transcript, p. 183, lines 23-24.  Unfortunately for

Handy, this occurs in a transcript he didn't prepare, and which he stipulated was accurate.[10]

Additionally, as this Court noted during Handy's testimony, Handy did not attempt to

withdraw his guilty plea until after he lost his objections to the sentencing enhancements.

Petitioner's memo admits this fact. Petitioner's Memorandum, p 3. Both Boyer's (Transcript, p.

127, line 6-18) and Handy's counsels admission (Transcript, p. 158, line 9) testimony supports

this conclusion.  Simply put, when Handy lost his roll of the dice, it was time to attempt to

withdraw his plea.

### Handy Did Not Show That His Attorneys Advised Handy
### That He Would Not Receive More than 13 to 17 Years of Imprisonment.

Handy, other than his self serving assertions, fails to show that his lead attorney, Boyer or

his other attorney, Stoutz, advised Handy that he would receive no more than 13 to 17 years in

prison.

At the outset, what is abundantly clear from review of all the evidence received at the

evidentiary hearing, is that Stoutz was not lead counsel because he was largely unaware of

federal court and sentencing procedures.  For this reason, he referred Handy to Boyer and Handy

hired Boyer.  Despite his unfamiliarity with the Sentencing Guidelines, Stoutz  was adamant that

he never promised a specific sentence, only his best estimate and Stoutz repeatedly explained that

the final sentence would be determined by this Court after the PSR report was compiled.  Stoutz

---

[10] The parties stipulated that the transcript (Government Exhibit V) accurately reflected
the audible portions of the Handy's tape.

testified that he was unaware of specific enhancements but knew they could be applied and he told Handy.

The evidence, adduced at hearing, shows that Handy was advised that he was facing life if he went to trial and that he would not prevail at trial. The testimony indicates that Stoutz, who definitely didn't know much about the Sentencing Guidelines, knew at least enough not to promise a sentence and to defer to the experienced counsel he advised Handy to hire. Handy admits he was referred to Boyer by Stoutz because, Stoutz wasn't a federal lawyer. Transcript p. 149, line 8-9. Boyer, the federal lawyer, was adamant that he properly discussed a full range of sentencing ranges, possible enhancements, and benefits of plea versus trial with Handy and that 13-17 years would be at the low end of any sentence absent enhancements. Transcript, p. 125, lines 1-6. Boyer in response to specific questioning, testified that he did not underestimate the range Handy was exposed to based on his plea. He told Handy that he could receive a sentence greater than 25 years. Transcript, p. 125, lines 18-25. Finally, Boyer believed Handy understood what he was told. Transcript, p. 126, lines 2-6.

More specifically: Both counsel Stoutz and Boyer testified extensively that Handy was aware of the maximum penalty he faced, life. Transcript, p. 26, line 21 through p.28, line 25; p. 108, lines 2-8. Despite Handy's claims to the contrary, Stoutz was also adamant that he reviewed the factual basis and plea letter (Bryan letter) with Handy, because he remembers Handy being concerned about the cooperation language in the plea letter. Transcript, p. 106, lines 10 through p. 107, line 16. The plea agreement clearly explains the maximum penalty and contains language in which Handy admits that he understands that any discussion with attorneys were only estimates. Handy could not admit he read this document and prevail on his 2255 claim. Thus,

16

Handy, in his initial filings and affidavit alleged that at the rearraignment he started reading page 1 of the plea agreement, was then rushed by Stoutz, signed the last page of the plea agreement and then "flipped" to page four of the factual basis to sign it where he caught the drug quantity mistake. Government Exhibit G, Paragraph 8.  At the hearing, Handy changes his story and doesn't say he flipped to page four to sign and caught the drug mistake after he started reading page one of the plea agreement. Instead, he testifies as to the factual basis, that he, "rough drafted it, just read it brief."  Transcript p. 155, line 17 through p. 157, line 4.  Later on cross examination, Handy again admits to "rough drafting" it but this time admits his "rough drafting" refers to both the plea agreement and factual basis.  Transcript, p. 172, lines 1-25.  Handy even admits that he was trying to, "Go over it, see if you see something wrong, you know." Transcript, p. 172, line 14-15. Handy knew what was in the plea agreement letter because Stoutz went over it with him in advance and Handy looked at to see if something was wrong. There was something wrong, the drug amount and it was corrected.

Boyer, the lead counsel, was adamant that he discussed not only the sentencing calculations based on drug quantity and criminal history. Further, Boyer told Handy that the 13-17 year range was without enhancements and was the low end of what Handy could expect, and that Stoutz had at least an understanding of the concepts of enhancements. Transcript, p. 140, lines 7-21; p. 142, lines 3-21; Transcript, p. 143, lines 10 through p. 144, line 11; Government Exhibit P.   Stoutz basically acknowledges this. Transcript, p. 55, line 17 through p. 56 line 17. Both counsels testified that their best estimate of the sentencing range he faced was approximately 13-17 years based on drug quantity and criminal history; that it was a range, the judge could sentence higher or lower, and that Handy didn't have a specific sentence guaranteed,

17

like would occur in state court.  Transcript, p. 119, lines 1 through p. 122, line 23; p. 124, line 2

through p. 126, line 6.  Boyer, an experienced federal defense attorney, testified repeatedly that

he told Handy and believed Handy knew all relevant sentencing range combinations and the

advantages and disadvantages of trial or plea, including potential enhancements and deductions,

including obstruction, acceptance of responsibility, and role enhancement.  Transcript, p. 127,

line 25 through p. 128, line 14; p. 128, line 21 through p. 130, line 24; p. 142, lines 3-21; p. 143,

lines 8 through p. 144, line 11.  Boyer testified that he would certainly have never promised any

defendant, including Handy, a specific sentence or a specific range. Transcript p. 143, line 3

through p. 144, line 11; p. 145, lines 6-10.

Even Handy admits, at least, that they had a discussion using the Sentencing Guidelines

book where he admits he thought he was at a level 34, but knew about level 36. Transcript, p.

181, lines 16-2.

In his original filings, Handy choose to claim he was only told about the sentencing range

based on the final negotiated drug quantity, based on criminal history III, with acceptance of

responsibility as Level 31; resulting in a sentencing range of 135-168 months.  He could not

admit the knowledge of the possibility of any enhancements prior to his rearraignment date or he

would not be able to prevail on his claims. As discussed above, the evidence adduced shows that

Handy lied that this was the only sentence he knew about.

**Neither the Record Nor Handy's Counsels' Testimony Supports Handy's Claim**
**That Handy Was Induced to Lie During His Rearraignment Colloquy**

Handy's incredible claims in his pleadings and specifically his affidavit (Government Exhibit G, paragraph 9) that Stoutz on the day of the rearraignment told Handy that he had to lie about the details of his plea agreement, specifically:

> 9.  Mr. Stoutz informed me that the Judge was going to asked me a lot of questions before the Court would accept my plea.  Mr. Stoutz informed me that he would guide me through the questions, he told me to tell the Judge that there were, 'no promises, no deals, I had read the plea agreement, factual basis, and I knew that the maximum penalty could be up to life.'

> 10.  During the Rule 11 guilty plea proceeding Mr. Stoutz made sure that I answered the Court's questions correctly, the way he told me to.  I didn't want to screw up my 13 year deal.

Handy backed off these specific allegations during his testimony which was significantly less specific: He stated first, that Stoutz told him before the Judge came out, "You can't tell a judge that you made a – your own specific number. So don't tell the judge or he ain't going to accept the plea." Transcript, p. 173, lines 23-25. Second, Handy claimed that Stoutz stood behind him, whispering the answers in his ear. (Transcript, p. 174, lines 11-15; Transcript, p. 175, line 1) while Judge McNamara was looking at both Stoutz and Handy (Transcript, p. 174, lines 21-23).

Stoutz was adamant during his testimony that at no time during his representation of Handy did he every tell Handy that he would have to lie at the plea colloquy, or make any statement that was less than truthful, or that he had a deal he had to keep from the Court. Transcript, p 102, line 16 through p. 103, line 2; p. 104, lines 1-3; p. 105, lines 4-6; p. 108, lines 12-24; p. 109, lines 3-6.  Boyer's testimony, while shorter, was just as adamant.  Transcript, p. 145, lines 18-23.

Stoutz's testimony at the hearing is collaborated by the transcript of the rearraignment colloquy.[11]  Handy was asked a series of questions by the Court designed to ensure that Handy knew the full extent of the maximum penalty he could be sentenced to by the Court and that further no one had made any inducements or threats for the plea, and there were no promises by anybody for Handy's plea and there was no agreement with the Government not contained in his plea agreement. Handy's plea was contained in his plea agreement and there was no other agreement.  His claims otherwise are supported by nothing other than his unbelievable testimony.

## REFUTATION OF MOVANT'S ADDITIONAL ARGUMENTS

Petititioner's counsel mixes a number of other arguments through her memorandum, all largely supported only by Handy's testimony.

The first claim is that "Petitioner was unaware of the consequences of his plea in the instant case, and certainly was not aware of the maximum penalty he faced." Petitioner's Post Hearing Memorandum, page 3.  It is addressed above.

Second, petitioner claims that his attorneys did not review his factual basis and plea agreement with him, and that he tried to read it before signing but was told to hurry up and sign. These facts were according to petitioner's memorandum, "confirmed by both Boyer and Stoutz." Petitioner's Memo, p. 3.  The only transcript citations listed in support of this second claim are citations to Handy's testimony.

---

[11] The Government's argument is this regard is fully briefed in the Goverment's Opposition to Motion Under 28 U.S.C. § 2255 to Vacate Set Aside or Correct Sentence by a Person in Federal Custody.  See pages 10-13 and 16- 18.

Stoutz was adamant that he reviewed the factual basis and plea agreement (Bryan letter) with Handy, because he remembers Handy being concerned about the cooperation language in the plea letter. Transcript, p. 106, lines 10 through p. 107, line 16. He also remembers Boyer's admonitions to him and because it was his first case and he didn't want to wait to the end to do things. Transcript, p. 23, lines 5 through p. 24, line 1. See also Transcript, p. 34, lines 10-16.

Third, petitioner claims that based on the promises of his attorneys', petitioner was "ignorant of the maximum sentence he would be exposed to, rendering his plea involuntary and invalid." Petitoner's memorandum, p. 4. In support, petitioner states Stoutz testified that he told petitioner "he was facing only 13-17 years, a far cry from the 27 years Petitioner actually received Hearing Transcript, pg. 25, 26, 29." Petitioner's Memorandum, p. 4. Actually, none of these transcript cites support petitioner's statement. Stoutz clearly states after his 13 to 17 year testimony on page 25, "And then the presentence report has to come." Transcript, p. 25, line 15. There is no reference to 13 to 17 years on page 26, instead Stoutz, testifies that he was trying to explain to Handy that unlike the state system, you don't get a number in concrete like you do with the state. Transcript, page 26, lines 2-8. On page 29, at line 1 the 13 to 17 range is mentioned as it is at line 13. However again, Stoutz, both times, indicates that he told Handy that this is where we thought he would fall if he plead, but "I can't give you a number. This is where you fall and then you have to wait for the report." Transcript, p. 29, lines 7-9; p. 29 lines 15-18. Additionally, Stoutz continually tried to explain that unlike the State system, you do not get an exact number of years as a deal. Transcript, p. 94, line 23 through p. 95, line 5. There is no mention by petitioner of Boyer's testimony.

21

Petitioner next cites Stoutz's failure to explain the maximum and minimum sentencing to Handy after receiving the PSI report.  Petitioner's Memorandum. P. 4.  Such failure has no direct bearing on the issue before the Court concerning the validity of Handy's plea at rearraignment, but to the extent the failure is important, petitioner's counsel fails to point out that Stoutz, stated he needed to talk to Boyer. Transcript, p. 49, line 23 through p. 50, line 2. This "egregious" failure simply supports Boyer's lead role and is further evidence that Stoutz was not representing himself to Handy as authoritative.  This is later corroborated by Handy in his telephone conversation with Stoutz on  January 1,  2004, when Stoutz states: "Because you got to remember, Harry was the main one that both of us were listening too," and Handy replies, "Yeah."  Government's Exhibit V, p. 3.  This conversation also refutes petitioner's next claim that, "Handy relied on the information provided by counsel Stoutz, with whom he had a prior close relationship."  Petitioner's memorandum, p. 4.

Next petitioner, without citation, claims that, "both Petitioner and his trial counsel confirmed at the evidentiary hearing that, had Mr. Handy known what kind of time he was facing, he would not have entered a guilty plea." Plaintiff's Memorandum, p. 5.  In fact, when these types of questions were asked by petitioner's counsel, the Government's objections were repeatedly sustained. Transcript, p. 90, line 13 through page 91, line 2;   p. 110, line 12 through, p. 111, p. 6.

Next, petitioner's counsel in attempting to meet the *Harmason v. Smith*, 888 F.2d 1527 (5th Cir. 1989) test attempts to differentiate *Harmason* loss because he could not prove there was only a, "mere statement of probabilities" by his attorney.  Petitioner's Memorandum, p. 5. Petitioner argues that the court heard specific testimony from Handy's trial counsel, "confirming

22

the promise of 13-years." This assertion is also without any citation to the record and has been already throughly discredited in the governments arguments above.

Next, petitioner's counsel argues that Handy's situation is analogous to a broken plea bargain by the government. Petitioner's Memorandum, p. 6. There is not a whit of evidence that the Government made any representations relied upon by Handy concerning his plea. The situation is not analogous and no case law is cited to support the contention.

Finally, petitioner's counsel discusses remedy. Petitioner's Memorandum, p. 6. Citing, *United States v. Palomo*, 998 F.2d 253 (5th Cir., 1993) petitioner claims he has two options, (1) specific performance, which requires the sentence to be vacated and that the defendant be resentenced by a different judge or (2) withdrawal of the guilty plea, and opportunity to plead anew, requiring vacation of both the conviction and sentence. Handy requests the second option.

Title 28 U.S.C. § 2255 provides that if the court determines that a prisoner is entitled to relief, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grand a new trial or correct the sentence as may be appropriate."

*United States v. Morrison*, 499 U.S. 361, 364 (1981) instructs that the remedy for a Sixth Amendment violation "should be tailored to the injury suffered and should not unnecessarily infringe on competing interests." The bulk of the reported cases that discuss remedy, are those where a plea agreement was rejected, defendant went to trial and was convicted and the court attempts to put the parties back on the same footing as when the plea process was ongoing. *See United States v. Hernandez*, 450 F. Supp.2d 950, 979-983, where the district court determined that the appropriate remedy for this type of ineffective assistance (where trial counsel provided

23

ineffective assistance in failing to advise the defendant adequately about the benefits and consequences of going to trial versus pleading guilty, with or without a plea agreement) would be to resentence as if the defendant had entered a "straight up" guilty plea. *Id.* at 984.     The district court  further concluded that the guidelines in effect at the time of the guilty plea would be used, but that they would be considered advisory.   *Id*, at 982.  Handy's guilt has never been at issue. Considering the competing interests, his remedy should be to be resentenced as if he had entered a "straight up" guilty plea.

## <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court finds that Handy failed to prove that his attorneys advised Handy that he would not receive more than 13 to 17 years of imprisonment, and whether his attorneys advised Handy to deny that he received a promise of a specific sentence at the guilty-plea hearing and, finally, deny Harry Handy his requested relief under 28 U.S.C. § 2255.

<div style="margin-left:40%">

Respectfully submitted,

JIM LETTEN

UNITED STATES ATTORNEY

 /s/ Tony Gordon Sanders

TONY GORDON SANDERS, Bar #11705

Assistant U.S. Attorney

Hale Boggs Federal Building

500 Poydras Street, Room 210-B

New Orleans, LA 70130

Tel. (504) 680-3167

</div>

24

<u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for all parties this 26th day of January, 2007.

/s/ Tony Gordon Sanders

TONY GORDON SANDERS

Assistant United States Attorney

25