UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA       *          CRIMINAL DOCKET

VERSUS                         *          NO: 00-319

HARRY HANDY                    *          SECTION: "D"

## ORDER AND REASONS

On Thursday, December 7, 2006, the court conducted an **Evidentiary Hearing** in compliance with the instructions from the United States Court of Appeals for the Fifth Circuit who vacated, in part, this court's Judgment denying Harry Handy's §2255 motion, and remanded the case for an evidentiary hearing on the following issues:

(1) whether Handy's attorneys advised Handy that he would not receive more than 13 to 17 years of imprisonment; and

(2) whether Handy's attorneys advised Handy to deny that he received a promise of a specific sentence at the guilty-plea hearing.

(*See* Fifth Circuit opinion. No. 04-30108, contained in the record

as part of mandate issued on July 18, 2006, Doc. No. 298).

Having considered the testimony and credibility of the witnesses who testified at the Evidentiary Hearing, the exhibits introduced into evidence at this hearing, the parties' post-hearing briefs, the record and the applicable law, the court now rules.

## I. Background

On October 6, 2000, Handy was charged with one count of conspiring to possess with intent to distribute more than five kilograms of cocaine hydrochloride and more than fifty grams of cocaine base (crack) in violation of 21 U.S.C. §846. (*See* Doc. No. 1, Indictment, Count 1).[1]

On March 21, 2001, Handy pled guilty to Count 1 of the Superseding Indictment. (*See* Rearraignment Transcript, Doc. No. 237). Before accepting his guilty plea, the court instructed Handy that "[i]f you don't understand any question, please ask me to explain it because it's essential to a valid plea that you understand each question before you answer it." (I*d*. at 3). The court also instructed Handy that he could "confer with [his] lawyer at any time before answering the question." (*Id*.). Handy assured the Court that he had "ample opportunity" to discuss his case with

---

[1]     The original Indictment was a seven-count Indictment against Harry Handy, Darren Hulbert and Brandon Smith. All three of these Defendants were charged in the conspiracy count. On December 8, 2000, the Indictment was superseded to add new defendants and charges. While nine additional alleged co-conspirators were added to the conspiracy charge, there was no effect on the conspiracy charge against Handy. (*See* Superseding Indictment, Doc. No. 23).

his lawyers and was satisfied with the services of his retained lawyers. (*Id.* at 3-4).

During the Rule 11 colloquy with the court, Handy further affirmed that he had discussed with his lawyer the charge in Count 1 of the superseding Indictment (i.e., conspiracy to possess with intent to distribute more than five kilograms of cocaine and more than fifty grams of crack) that Handy intended to pled guilty to, and that he in fact did the act charged in Count 1. (*Id.* 5-6).

At Handy's Rearraignment, the court advised Handy of (and Handy acknowledged he understood that) the maximum possible sentence that could be imposed was life imprisonment, with a mandatory minimum term of ten years, a fine of four million dollars, at least five years supervised release, and a mandatory special assessment fee of $100. (*Id.* at 6). Handy further acknowledged he understood that the court could impose the maximum possible sentence. (*Id.* at 6-7).

In pleading guilty, Handy affirmed that he had discussed the sentencing guidelines with his lawyer. He also acknowledged his understanding that the court was not bound by those guidelines, and if the court found the guidelines did not take into account something about Handy or the crime to which he was seeking to plead guilty, the court could choose to sentence him to a sentence either greater or less than the guidelines. (*Id.* at 7).

Handy also pled guilty pursuant to a written plea agreement

with the Government.  (*See* Handy's Plea Agreement, Doc. No. 90).
In this agreement, Handy stated that he understood that "any
discussions with [his] attorney or anyone else regarding sentencing
guidelines [were] merely rough estimates and the Court [was] not
bound by those discussions."  (*Id*. at 3).  Further, in the Rule 11
colloquy with the court, Handy denied that anyone had made any
promise other than what was contained in the plea agreement to get
him to plead guilty.  (Rearraignment TR. at 8).

The following exchange was made regarding promises about his
sentence:

THE COURT:    Anyone connected with any law enforcement
agency, anyone else made any promise to you
about what your sentence is going to be?

THE DEFENDANT: No.

THE COURT:    Did anyone promise what your sentence was
going to be?

THE DEFENDANT: No, sir.

THE COURT:    No one has told you, haven't said, Mr. Handy,
here is what your sentence is going to be?

THE DEFENDANT: They haven't promised that.

THE COURT:    You don't know what your sentence is going to
be; is that correct?

THE DEFENDANT: That's correct.

(*Id* at 9).

4

At his Rearraignment, Handy also executed a Factual Basis which set forth the facts supporting his conviction. (*See* Factual Basis, Doc. No. 91).[2]  Handy also attested to the accuracy of all facts contained in the Factual Basis in the Rule 11 colloquy exchange with the court.  (*See* Rearraignment Transcript, Doc. No. 237, pp. 9-10).[3]

After accepting Handy's guilty plea, the court told Handy that the court would order a Presentence Investigation Report.  The court further told Handy to cooperate with the Probation Office, so that the report would contain accurate information because the report was important in the court's determination of his sentence. (*See* Rearraignment Transcript, Doc. No. 237, at 10-11).

The original Pre-Sentence Investigation Report (PSR) fixed Handy's base offense level at 36 under §2D1.1 of the sentencing guidelines (USSG), with (1) a two-level enhancement under USSG §2D1.1(b)(1), for a dangerous weapon being possessed during the commission of the offense; (2) a two-level enhancement under §3B1.1(c), for being an organizer or leader; and (3) a two-level

---

[2]    As set forth in the Factual Basis, the government and Handy agreed that the amount of cocaine attributable to Handy for the purpose of the cocaine conspiracy was 367.8 grams, and the amount of crack attributable to Handy for purpose of the crack conspiracy was 464.9 grams. (*See Exhibit J*, Factual Basis, p. 4).

[3]    On March 21, 2001, seven co-defendants (Brandon Smith, Damien M. Wilson, Darren Hulbert, Terry Adams, Harry Heintz, Regina Handy and Tarita Smith) pled guilty and each signed a Factual Basis consistent with the Factual Basis signed by Harry Handy.  Further, on April 4, 2001, co-defendant, Eugene Thompson, pled guilty and signed a Factual Basis, consistent with the Factual Basis signed by Harry Handy.

enhancement under USSG §3C1.2, for recklessly endangering the lives of another person while fleeing from a law enforcement officer. With a three-level adjustment for acceptance of responsibility, Handy's total offense level was 39.  Handy's criminal history category was III, resulting in a guideline range for imprisonment of 324 to 405 months (or 27 to 33.75 years).  (*See* PSR, ¶¶57-69).

Through his retained counsel, Handy filed objections to the PSR arguing that: (1) Handy should not be held responsible for 67.8 grams of crack cocaine seized as a result of controlled purchases made from co-defendant Brandon Smith; and (2) that the elements necessary for a two-level enhancement under §3B1.1 for being an organizer or leader had not been demonstrated. [4]  ( *See* Handy's Objections to PSR).

A revision to the PSR was made based on Handy's first objection.  The reporting U.S. Probation Officer agreed that because there was a lack of direct evidence that the crack sold by Smith to the undercover officers from March 14 through April 12, 2000, was supplied by Handy to Smith, that it would be an injustice to attribute this amount of drugs to Handy.  Thus, 67.8 grams of crack cocaine were subtracted from the total amount of crack cocaine attributable to Handy, thereby reducing his base offense

---

[4]     Handy's counsel also filed 17 "general objections" to various terms and implications made in the PSR. (*See* Handy's Objections to PSR, attached to end of Government's Exhibit C).  At Handy's sentencing, his counsel, Harry Boyer, agreed that these 17 general objections would have no impact on the guideline calculation. (*See* Doc. No. 231, Sentencing Transcript, p. 2).

from 36 to 34.  (*See* June 15, 2001, Supplemental Addendum to PSR, pp. 30-31).

With no other changes made, Handy's total offense level was reduced from 39 to 37, and with a criminal history Category III, Handy's guideline range for imprisonment was 262 to 327 months. (*See* PSR, ¶122).  After reviewing Handy's objections and hearing counsel's argument at the sentencing hearing, the court affirmed the supplemental PSR sentencing range recommendation, and the court sentenced Handy to 327 months as to Count 1.  (  *See* Sentencing Transcript, Doc. No. 231, p. 5).

On July 20, 2001, Handy's counsel Stoutz timely filed a notice of appeal.  On August 8, 2001, Stoutz filed a motion to withdraw, which was granted along with an order appointing the Federal Public Defender.  Handy's appointed counsel ultimately filed a brief appealing this court's Rule 11 colloquy, on the basis that the court failed to advise him of his right to a "jury" trial.

On April 25, 2002 (after appellate briefing was completed), Handy's counsel moved to re-open briefing because "defendant-appellant himself has stressed that there are issues he would prefer had been raised." ( *See* Motion to Re-open Briefing, Government's Exhibit E, attached to Gov.'s Opp. to Handy's §2255 motion).  The Fifth Circuit granted this motion and Handy filed his supplemental brief alleging this court erred in refusing his request to withdraw his guilty plea at the sentencing hearing on

July 11, 2001.

On October 21, 2001, the Fifth Circuit denied Handy's appeal finding that Handy had not shown that the court's omission of the word "jury" from the plea colloquy affected his substantial rights. (*See* Fifth Circuit Opinion No, 01-30884, Doc. No. 251). The Fifth Circuit also found that this court "did not abuse its discretion in denying Handy's last-minute *pro se* request to withdraw his guilty plea (made near the conclusion of the sentencing hearing and over three and a half months after the plea had been accepted) because Handy did not properly support the motion by asserting any fair and just reason for withdrawing the plea." (*Id*. at 2.).

The Fifth Circuit also pointed out that:

> Nowhere in [Handy's supplemental] brief, nor anywhere in the record, is there any suggestion of any reason why or on what basis withdrawal of the plea was sought or should have been allowed or what would or could be shown in that respect if the case were remanded; **indeed the record indicates it is highly improbable that there could be any fair and just reason to withdraw the plea**.

(*Id*. at 3)(emphasis added).

On July 17, 2003, Handy timely filed a §2255 motion, claiming: (1) "ineffective assistance of counsel and conflict of interest" based on numerous grounds; and (2) his conviction and sentence using a criminal history category III are unconstitutional. (*See* Handy's §2255 Motion & Supporting Memo, Doc. No. 255 & Handy's Traverse, Doc. No. 265). The court found that Handy was not

8

entitled to §2255 relief on any of the claims asserted.  (*See* Docs. Nos. 270 & 271, "Order and Reasons" and Judgment denying Handy's §2255 motion).

Handy appealed this court's denial of his §2255 motion, and the Fifth Circuit granted Handy a Certificate of Appealability (COA) on the following issues: (1) whether Handy's trial attorneys were ineffective in that they falsely promised Handy that he would be sentenced to no more than 13 years in prison if he pleaded guilty; (2) whether his attorneys' false promise rendered his guilty plea unknowing and involuntary; and (3) whether the district court should have conducted an evidentiary hearing on these issues. *United States v. Handy*, No. 04-30108 (5th Cir. Aug. 18, 2004)(unpublished).

On reconsideration, a panel of the Fifth Circuit granted a COA on the additional issue of "whether Handy's trial counsel was ineffective for failing to object at sentencing to the Government's breach of the plea agreement." *United States v. Handy*, No. 04-30108 (5th Cir. Oct.27, 2004)(unpublished).

In its ruling of May 25, 2006, the Fifth Circuit affirmed in part and vacated in part this court's Judgment denying Handy's §2255 motion.  In light of *United States v. Herrera*, 412 F.3d 577, 580-82 (5th Cir. 2005), the Fifth Circuit remanded the case with instructions to hold an evidentiary hearing concerning the following issues:

(1)   whether Handy's attorneys advised Handy that he
      would not receive more than 13 to 17 years of
      imprisonment; and

(2)   whether Handy's attorneys advised Handy to deny
      that he received a promise of a specific sentence
      at the guilty-plea hearing.

(*See* Fifth Circuit opinion. No. 04-30108, contained in the record
as part of mandate issued on July 18, 2006, Doc. No. 298).[5]

## II. Legal Analysis

In *United States v. Herrera*, 412 F.3d 577 (5th Cir. 2005), the
Fifth Circuit stated that:

> One of the most important duties of an
> attorney representing a criminal defendant is
> advising the defendant about whether he should
> plead guilty.  An attorney fulfills this
> obligation by informing the defendant about
> the relevant circumstances of a plea.
> Apprising a defendant about his exposure under
> the sentencing guidelines is necessarily a
> part of this process.  A defendant cannot make

---

[5]    However, the Fifth Circuit affirmed this court's holding that
Handy's trial counsel was not ineffective for failing to object to the
Government's alleged breach of the plea agreement. (*See* p. 3 of Fifth Circuit
Opinion. No. 04-30108, dated May 25, 2006 and contained in the record as part
of mandate issued on July 18, 2006, Doc. No. 298).

        The Fifth Circuit also found that it lacked jurisdiction to
consider the following issues because a COA was not granted as to them: (1)
his trial attorneys were ineffective in that they faild to investigate the
facts, file objections to, and present evidence in opposition to the two-level
sentencing enhancement for possession of a weapon; and (2) his appellate
attorney was ineffective in that he failed to argue that the district court
failed to establish on the record at the rearraignment hearing both the
factual basis for the plea and the elements of the offense. *Id*. at 3-4.

> an intelligent choice about whether to accept
> a plea offer unless he fully understands the
> risks of proceeding to trial. "Failing to
> properly advise the defendant of the maximum
> sentence that he court receive falls below the
> objective standard required by *Strickland*."

*Herrera*, 412 F.3d at 580.

In *Hererra*, a jury convicted Herrera of conspiracy to distribute cocaine, aiding and abetting an attempt to possess cocaine with intent to distribute, and being an unlawful drug user in possession of a firearm. *Id*. at 579. The district court sentenced Herrera to concurrent 78-month prison terms on each count. *Id.* Initially a panel of the Fifth Circuit affirmed the drug convictions but reversed the firearm conviction. *Id.* But on *en banc* rehearing, the Fifth Circuit affirmed the firearm conviction. *Id.*

Herrera filed a §2255 motion in district court alleging that his attorney had incorrectly advised him to reject the Government's plea offer, under which he would have received a maximum four-year (or 48 month) prison sentence. *Id*. at 579. The attorney recommended rejecting the plea under a false belief that Herrera faced only a 51-month maximum guideline sentence if convicted at trial. *Id*. However, Herrera actually faced a sentencing range of 78-97 months under the guidelines, and again, he was ultimately sentenced to 78 months. *Id*.

11

The district court denied the §2255 motion, but the Fifth Circuit reversed that ruling. The Fifth Circuit stated that the "precise advice of counsel was essential to deciding whether to accept the Government's plea offer." *Id*. at 581. "If the attorney actually advised Herrera that he faced a maximum of 51 months of prison time, Herrera did not fully understand the risks of going to trial." *Id*. Thus, the Fifth Circuit remanded the case to the trial court for an evidentiary hearing on whether such statements were actually made by Herrera's attorney. *Id*.

**A.   The performance of Handy's trial attorneys was not deficient.**

At the evidentiary hearing in this matter, Petitioner Handy testified as well as his former attorneys, Clifton Stoutz and Harry Boyer, who were called by Handy in his case in chief. Messrs. Stoutz and Boyer represented Handy from his initial appearance to his sentencing. Mr. Stoutz explained that he had previously represented Handy in various state criminal matters. However, because this was Mr. Stoutz's first federal criminal case, he recommended to Handy that he also retain attorney Harry Boyer, who was an experienced federal defense attorney. Handy then retained Mr. Boyer to represent him, along with Mr. Stoutz.[6]

---

[6]     At the evidentiary hearing, both Mr. Stoutz and Mr. Boyer testified that Mr. Boyer was lead counsel. (TR. at p. 15, line 20 & p. 113, lines 21-22 & p. 120, line 18 &p. 122, lines 13-18).

Although Handy ultimately pleaded guilty, he now essentially contends that he would have gone to trial had he known that he would be sentenced to 27 years imprisonment, and not to the 13-17 years imprisonment as his attorneys' had allegedly promised him. However, in addressing the two issues posited by the Fifth Circuit, the court finds that:

    (1)    Handy's attorneys did **not** advise Handy that he would not receive more than 13 to 17 years of imprisonment; and

    (2)    Handy's attorneys did **not** advise Handy to deny that he received a promise of a specific sentence at the guilty-plea hearing.

The court next discusses these two findings in more detail.

## **(1)  Handy's attorneys did not advise Handy that he would not receive more than 13 to 17 years of imprisonment.**

Attorney Clifton Stoutz advised Handy that the Government's evidence against him was very strong and he thought it was in Handy's best interest that he plead guilty. (TR. at p. 141, lines 14-20 through p. 142, lines 1-2)). Mr. Stoutz testified that he discussed with Handy that if he went to Trial, he was looking at life. (TR. p. 26, lines 21-25 through p. 27, lines 1-6).

Attorney Stoutz admitted that he was unfamiliar with the Sentencing Guidelines and enhancements (because again this was his first federal criminal case), and hence he deferred to the more experienced Attorney Boyer regarding these subjects.    Boyer testified that he stressed to Stoutz "that there was a great deal of difference between federal sentencing guidelines and the state sentencing scheme."  (TR. at p. 140, lines 18-21).

Attorney Boyer recalled meeting with Handy four times.  (TR. at p. 140, lines 22-24).  In one of those meetings, he met with Handy and had a "detailed discussion" of the sentencing guidelines.[7]  (TR. at p. 141, lines 5-8).  In discussing with Handy whether he should go to Trial or plead, Boyer testified that "I in no uncertain terms thought it was in Mr. Handy's best interest ..., based upon the government's evidence that I was aware of,[8] that he plead guilty.   But ... I don't make the decision for clients." (TR. at p. 141, lines 11-18).

Stoutz testified that while he explained to Handy that he would fall within the range of 13 and 17, he was adamant that he never promised a specific sentence, and he repeatedly explained to

_____

[7]    It was Attorney Boyer's recollection that Attorney Stoutz was present at all the meetings Boyer had with Handy, including the meeting wherein the sentencing guidelines were discussed.  (TR. at p. 118, lines 4-19).

[8]    Boyer thought "the evidence in this case was real strong."  (TR. at p. 142, line 2).

14

Handy that the final sentence would be determined by the court after the Pre-Sentence Investigation report was prepared.[9] (TR. at p. 29, lines 1-18).

Regarding his meeting with Handy before the Rearraignment, Attorney Stoutz testified:

> Q.   [D]uring this meeting, did you ever promise the defendant an exact sentence or an exact range?
>
> A.   Absolutely not.

(TR. at page 108, line 25 through page 109, lines 1-2).

Stoutz further testified:

> Q.   And during the rearraignment, did you ever promise the defendant an exact sentence or an exact range?
>
> A.   Absolutely not.

(TR. at p. 109, lines 7-9).

Stoutz also testified that the maximum penalty provision (i.e., life imprisonment and/or a fine of $4,000,000) contained in the plea letter (also called the "Bryan" letter) was read to Handy. (Tr. at p. 107, lines 17-25 through p. 108, lines 2-8; *also see* Exhibit B, the Bryan letter).[10]

Although Defendant Handy first testified (at the Evidentiary

---

[9]     *See* fn. 17, *infra.*

[10]    References to "Exhibits" in this ruling refer to those Exhibits introduced and admitted into evidence at the Evidentiary Hearing.

Hearing) that he never read the plea letter or the Factual Basis (TR. at p. 171, lines 16-18), he later testified that he "rough drafted" them, noticed that the amount of cocaine was incorrectly stated in the Factual Basis, and pointed that out to attorney Stoutz. (TR. at p. 172, lines 4-23). Stoutz then had the amount of cocaine corrected. (*Id.* at lines 24-25; *also see* Exhibit J, Factual Basis, p. 4, which was corrected as to the amount of crack).

Attorney Boyer testified that he discussed with Handy a full range of sentences, possible enhancements and benefits of a plea versus going to trial. Boyer believed that the applicable sentence range was 13-17 years without enhancements, but that with enhancements[11] and criminal history,[12] the range went higher. (TR. at p. 125, lines 1-6; TR. at p. 143, lines 14-21). He also explained to Handy that objections to enhancements could be filed,[13]

---

[11]    Boyer explained to Handy (and Mr. Stoutz) what enhancements were, the range for those enhancements, and objections to enhancements. (TR. at p. 125, lines 8-17; TR. at p. 140, lines 7-15). For example, Boyer told Handy that it was possible that the Government would be looking at a 2-point enhancement for Handy's purported role as "leader" of the "Harry Handy organization." (TR. at p. 142, lines 3-16).

[12]    Boyer further explained that Handy's arrest while he was on appeal bond after conviction in another case was a ground for enhancement. (TR. at p. 142, lines 17-21).

[13]    Handy's attorneys actually filed seventeen objections, and the base offense level was reduced from 36 to 34 because there was insufficient evidence linking Handy to 67.8 grams of crack. *(See* Exhibit J, PSR, Revised PSR, and PSR Supplemental Addendum, pp. 12, 30-31).

16

but that Handy could still receive a sentence in excess of 25 years.[14] (TR. at p. 125, lines 13-25). Boyer believed that Handy understood what Boyer was telling Handy. (TR. at p. 126, lines 1-6).

Boyer also testified that he probably discussed with Handy that even by pleading guilty he could still potentially receive a life sentence. (TR. at p. 124, lines 6-11). Although Boyer explained to Handy that that scenario would be outside of what he thought the applicable guideline range was, the judge was not bound by that range. *Id*.

And while Boyer believed that Handy's sentencing guideline range (without enhancements) was between 13 and 17 years, Boyer specifically testified:

> Q.  [During the meeting in which you discussed the sentencing guidelines], did you ever promise the defendant an exact sentence or an exact range?
>
> A.  I've never promised any defendant, including Mr. Handy, what their sentence would be in this court, in this

---

[14]    Handy received 2-level enhancements for each of the following: the use of a dangerous weapon, aggravating role and reckless endangerment. (*See* Exhibit J, pp. 12-14, 30-35). He also received a 3-level reduction for acceptance of responsibility. (*Id*. at p. 14). Based on a total offense level of 37 and a criminal history category of III, the guideline range of imprisonment was 262 to 327 months. (*Id*. at p. 22).

    This court sentenced Handy to the maximum of 327 months (27.25 years) imprisonment. The court advised Handy that it imposed the maximum sentence "based on your criminal history, including repetitive drug trafficking crimes and violent tendencies." (Sentencing TR. at p. 5).

17

    courthouse, or in any federal court
    proceeding. It's impossible.

Q. Any so you never told him that he would
  get no more than 13 years?

A. I never told Mr. Handy anything about
  what he would get, other than the
  applicable guideline sentencing ranges as
  I perceived them to be, with enhancements
  and without enhancements.

      . . .

Q. [D]id you ever tell Mr. Stoutz that Mr.
  Handy would absolutely fall within any
  particular range, or Mr. Handy would get
  an exact sentence?

A. Never ever.

Q. And you never told Mr. Handy at any time
  --

A. I never told Stoutz or Handy that.

Q. -- that he would receive an exact
  sentence?

A. Absolutely not. I never told any client
  in this building that.

(TR. at p. 143, lines 3-13; TR. at p. 145, lines 2-10).

  Attorney Boyer also explained on direct examination:

Q. So when the [Pre-Sentence Investigation
  Report] came out, your client was pretty
  shocked, wasn't he?

A. I don't think he was shocked, no. I
  think he was concerned about those
  potential enhancements. I think we
  explained to him, and I explained to him,
  that there are objections to those

> enhancements and the judge would have to
> decide, based upon the law and the facts
> that are present in the case.
>
> Q.    Did you talk with your client about the
>       fact that under the guidelines he's now
>       absolutely looking at 21 to 27 to 28
>       years if you lose the objections?
>
> A.    Yeah, I told him what the range is if you
>       lose the objections, yes, ma'am.
>
> Q.    All right.
>
> A.    I didn't say it was absolute, no.
>       Because I don't think it was absolute,
>       otherwise I wouldn't have filed the
>       objections, Ms. White.

(TR. at p. 130, line 25 through p. 131, lines 1-16).

Although Handy's testimony at the Evidentiary Hearing contradicts much of the testimony by attorneys Stoutz and Boyer, the court finds that Handy's testimony is not credible. The totality of the record evidence and testimony at the evidentiary hearing "do not indicate [Handy's] reliance on a specific, firm sentencing agreement or representation, but rather demonstrate no more than an understanding on [Handy's] part that his sentence would probably be no more than [13 to 17 years], but that this was not certain and was contingent of the judge's evaluation of the forthcoming pre-sentence report."    *Harmason v. Smith*, 888 F.2d

1527, 1531 (5th Cir. 1989).[15]

## (2) Handy's attorneys did not advise Handy to deny that he received a promise of a specific sentence at the guilty-plea hearing.

At the evidentiary hearing, Attorney Clifton Stoutz testified:

> Q. And still talking about your fourth

---

[15] In *Harmason*, the petitioner-appellant Harmason appealed the district court's order denying his application for writ of habeas corpus pursuant to 28 U.S.C. §2254. Harmason maintained "that his plea of guilty in state court to two armed robberies was involuntary and unknowing because it was predicated on a statement by his attorney that led him to believe his sentence would be no more than fifteen years, when in fact he received an eighteen-year sentence." *Harmason*, 888 F.2d at 1528.

In affirming the district court's ruling, the Fifth Circuit stated that "for a guilty plea to be constitutionally valid, it must be voluntary and knowing," but a "mere understanding that [a defendant] would receive a lesser sentence in exchange for a guilty plea will not abrogate that plea should a heavier sentence actually be imposed." *Id.* at 1529.

The court also instructed that "for a prisoner to receive federal habeas relief on the basis of alleged promises that are inconsistent with representations made in open court when his guilty plea was accepted, he must 'prove (1) exactly what the terms of the alleged promises were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise.'" *Id.* (citations omitted). Here, Handy has not met these requirements.

Like Harmason, Handy failed "to surmount the 'formidable barrier' presented by [Handy's] own open court assertions that there had been 'no promises' about his sentence and that he understood that his sentence 'exposure' was the statutory maximum." *Id.* at 1532. *See also United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002)("[W]e give the statements during the colloquy greater weight than we give unsupported, after-the-fact, self-serving revisions."); and *United States v. Rodriguez*, 62 F.3d 723, 725 (5th Cir. 1995)("An additudinal change after learning the consequences of one's plea is not a sufficient basis to justify the withdrawal of the plea after sentencing.").

In his post-hearing memorandum, Handy argues that "Unlike Harmason, this Court heard specific testimony, not only from Petitioner, but from his trial counsel, confirming the promise of 13 years." (Doc. No. 341, Handy's Post-Hearing Memo. at p. 5). However, this assertion is without citation to the transcript of the evidentiary hearing, and as discussed by the court, it has been discredited.

> meeting with the defendant before the
> rearraignment, did you ever induce ... or
> coach the defendant to hide a guaranteed
> sentence?
>
> A.    Absolutely not.
>
>                   . . .
>
> Q.    [D]uring the rearraignment itself on
> March 21st, 2001, did you ever induce or
> coach the defendant to hide a guaranteed
> sentence at the rearraignment?
>
> A.    Absolutely not.

(TR. at p. 108, lines 12-24, and p. 109, lines 3-6).

Similarly, attorney Boyer testified:

> Q.    And did you ever tell Mr. Stoutz ... that
> [he] would have to tell Mr. Handy that he
> would have to lie under oath at any time?
>
> A.    Absolutely not.
>
> Q.    And you never told Mr. Handy --
>
> A.    That would be a criminal offense.
>
> Q.    -- to lie here?

(TR. at p. 145, lines 11-23).

On the other hand, Handy testified at the Evidentiary hearing
that his answers at his Rearraignment were coerced and coached and
attorney Stoutz provided the answers for him. (TR. at p. 174,
lines 1-8). Handy specifically testified:

> Q.    [H]ow did [Mr. Stoutz] provide the
> answers for you; did he speak up while
> the judge was asking you questions?

21

    A.    No, he was behind me telling me in my
          ear, whispering in my ear.

    Q.    He was whispering in your ear in front of
          Judge McNamara?

    A.    Yes, on the side of me like, you know,
          telling me what to say.

    Q.    And do you recall if Judge McNamara told
          Mr. Stoutz to stop whispering in your
          ear?

    A.    Probably.  I don't know.

    Q.    Okay.  Was Judge Mcnamara looking at you
          when he was asking you the questions?

    A.     Yes.

    Q.    And Mr. Stoutz is right behind you?

    A.    Yes.

    Q.    Okay. Whispering in your ear?

    A.    Yes.

(TR. at p. 174, lines 9-25 through p. 175, lines 1-2).

        The court finds this testimony by Mr. Handy is simply
incredulous and the record is void of any evidence to support this
assertion.   This court not only conducted Handy's plea hearing, it
observed the demeanor of Handy and his counsel during the plea
hearing, and concluded that Handy's plea was "voluntary and
knowledgeable and has a basis in fact."   (*See* Doc. No. 237,
Rearraignment TR. at p. 10).   Considering the totality of the
record evidence and testimony at the evidentiary hearing, the court

concludes that Handy's attorneys did not advise Handy to deny that he received a promise of a specific sentence at the guilty-plea hearing.

## B.  Handy was not "prejudiced" by his attorneys' performance.

In *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004), the defendant Grammas appealed the district court's denial of his §2255 motion, arguing that his counsel's performance regarding whether to stand trial or plead guilty was constitutionally deficient.  At the trial level, Grammas had decided to stand trial rather than plead guilty.  Grammas based that decision on his attorney's incorrect advice that if convicted at trial, Grammas faced 6-12 months imprisonment.[16]  Grammas was convicted at trial, and the court ultimately sentenced him to 70 months in prison.  *Id*. at 435.

On appeal, the Fifth Circuit found that his counsel was **deficient** because he was unfamiliar with the Sentencing Guidelines and substantially misstated the Grammas' exposure if he were to be found guilty at trial.  *Id*. at 437.  However, the Fifth Circuit concluded that further proceedings were needed to determine remanded whether Grammas was **"prejudiced"** by his attorney's ineffectiveness, and thus the court remanded the matter to the district court to specifically determine whether it was reasonably

---

[16]    Grammas' attorney admitted using the wrong section of the sentencing guidelines.  *Grammas*, 376 F.3d at 435.

23

probable that (1) the deficient performance by Grammas' attorney affected Grammas' decision whether to plead guilty, and (2) if Grammas had pleaded guilty, whether he would have received a reduction in sentence under the federal guidelines. *Id*. at 439.

In *United States v. Ridgeway*, 321 F.3d 512 (5th Cir. 2003), Defendant Ridgeway was convicted of conspiracy with intent to distribute methamphetamine. In his §2255 motion, Ridgeway claimed that his attorney was deficient in failing to inform him about the mandatory minimum sentence for his crime. Ridgeway asserted that, prior to trial, his attorney assured him that he would receive at most four years in prison.[17]   *Id*. at 513. Ridgeway's crime, however, carried a mandatory minimum sentence of 120 months (or ten years). He was ultimately sentenced to 121 months in prison. *Id*.

Ridgeway claimed that, if he had known about the ten-year mandatory minimum, he would have pled guilty rather than stand trial. *Id*. The district court denied habeas relief. The Fifth Circuit affirmed, finding that Ridgeway was not prejudiced by any alleged ineffectiveness. *Id.* at 515-16.[18]

---

[17]    Ridgeway's attorney maintained that he did tell Ridgeway about the mandatory minimum. *Id.* at 514. The Fifth Circuit did not decide this factual dispute, because the court found that even if his counsel was ineffective, Ridgeway could not demonstrate that he was prejudiced by his counsel's allegedly deficient performance. *Id.* at 515.

[18]    The Fifth Circuit found that Ridgeway did not show that he was prejudiced by his attorney's alleged deficiency because he did not show that he would have received a "significantly less harsh" sentence. *Ridgeway*, 321 F.3d at 515.

In *Herrera* (discussed *supra*, pp. 12-13), *Grammas* and *Ridgeway*, the defendants went to trial rather than plead guilty. Here, Handy pled guilty pursuant to a plea agreement, rather than go to trial.

In *United States v. Taylor*, 2005 WL 3370624 (S.D.Miss. 2005)(Bramlette, J.), a case more factually similar to this case, the defendant pled guilty pursuant to a plea agreement, rather than go to trial. Defendant Taylor pled guilty to possession with intent to distribute cocaine base, and was sentenced to 151 months imprisonment. In his §2255 motion, Taylor claimed that "his attorney 'tricked' him by telling him that he would be sentenced to only 41 months after pleading guilty, and that he was 'astonished' when the was actually sentenced to 151 months." *Id.* at *3.

The district court denied Taylor's §2255 motion because it found that Taylor was not prejudiced even if his attorney mis-advised him about his true exposure under the plea agreement. The court explained:

> Taylor was always subject to at least 151 to 188 months imprisonment under the sentencing guideline range even if his attorney had advised him that he would only be sentenced to 41 months under the terms of the plea

---

However, the Fifth Circuit no longer uses the "significantly less harsh" test. Rather, it adopted the "any amount of jail time" test in *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004).

agreement.[19] ...  Had Taylor proceed to trial and been found guilty, the guideline range of his sentencing would have only been increased.[20]

. . .

[T]he petitioner was not prejudiced inasmuch as there is no argument that he was sentenced to a greater amount of time because of [his attorney's alleged] mistake.  To establish prejudice, Taylor would have to show that if his attorney had properly advised him of his probable sentence under the plea, he would have gone to trial instead, and that he would have either been acquitted or, if convicted at trial, that this Court would have sentenced him to less than 151 months in prison.  Taylor, however, makes no argument that he is actually innocent or that a conviction would have been unlikely at trial for other reasons, such as lack of evidence.  Additionally, there is no indication that this Court would have sentenced him more leniently upon a conviction at trial.

*Id*. at **5-6.

---

[19]  The *Taylor* court noted:

even if his attorney has mis-advised him as to his likely sentence, both the Memorandum of Understanding and the Court's statements at Taylor's plea hearing clearly indicated to him that the Court would ultimately determine what his sentence would be.

*Taylor* at fn. 4.

[20]  The *Taylor* court further noted:

Taylor received a three point downward adjustment to his offense level because he accepted responsibility for his crime under th plea....Had he gone to trial, that downward adjustment would not have been warranted.

*Taylor* at fn. 5.

In this case, the court finds that Handy was **not prejudiced** *even if* his attorneys mis-advised him about his true exposure under the plea agreement.  While Handy now contends that he would have gone to trial instead of pleading guilty (had he known that he could have been sentenced to 27 years)[21], it is not reasonably probable that he would have been found not guilty at trial and it is not reasonably probable that Handy would have received a more lenient sentence upon a conviction at trial.

### (1) If Handy would have gone to Trial, it is not reasonably probable that he would have been found not guilty.

Handy does not make the claim that he is actually innocent or that a conviction would have been unlikely at trial for other reasons, such as lack of evidence.  Indeed, the evidence against Handy was overwhelming.

Attorney Stoutz testified at the Evidentiary Hearing:

> Q.  Did you ever discuss with your client the fact that he was pleading to a charge that would net him a life sentence potentially?
>
> A.  If he went to trial.  Because he was talking – you know, he was asking about trial and I – I remember him asking about going to trial when we were in Templeman and, you know, we had to explain to him:

---

[21]    *See* TR. at p. 181, lines 1-8; and p. 182, lines 10-14.

> Look, these are the facts.  They got you.
> This is it for you.
>
> You know, this is not something you go to
> trial on.  And I - honestly, I didn't
> want him to go to trial because he would
> definitely be doing the rest of his life
> in jail.

(TR. at p. 26, lines 21-25 through p. 27, lines 1-6).

Attorney Boyer also testified:

> Q.   What did you tell [Handy] about how
> strong the evidence was against him?
>
> A.   I thought the evidence in this case was
> real strong.

(TR. at p. 141, line 25 through p. 142, lines 1-2).

Handy himself admitted that after his attorneys received the superseding indictment, his attorneys "were just basically telling me that I'm charged with this and that and it ain't looking good for you and I don't got a chance at trial, plead guilty to this and get it over with."  (TR. at p. 150, lines 17-21).

Further, on March 21, 2001 (the same day the Handy pleaded guilty) seven co-defendants (Brandon Smith, Damien M. Wilson, Darren Hulbert, Terry Adams, Harry Heintz, Regina Handy and Tarita Smith) entered guilty pleas and signed factual bases consistent with the factual basis that Handy signed.  On April 4, 2001, co-defendant, Eugene Thompson, pleaded guilty and also signed a factual basis consistent with the factual basis signed by Handy.

28

(*See* Exhibits F, G-N, attached to Gov.'s Opp. to Handy's §2255 motion). Taped drug conversations to which Handy was a party and other evidence are outlined in these factual bases. *Id*.

### (2) It is not reasonably probable that Handy would have received a more lenient sentence upon a conviction at trial.

The maximum statutory penalties Handy faced was life imprisonment with a mandatory minimum of 10 years. At the Evidentiary Hearing, counsel for the Government and counsel for Handy stipulated as follows:

> AUSA Sanders: Your Honor, I think the government's offering a stipulation that the plaintiff is this case is willing to agree to that if a representative from the Probation Office were to testify, and the original probation officer is no longer employed with the probation [office], he just did the PSIR, which is Government Exhibit J.
>
> But if an officer from probation were called to testify that he would testify consistently with the PSIR, which is in the file, as to the sentencing which most likely would have occurred had Mr. Handy gone to trial and been convicted in the sense that as to the drug quantity amount and the potential enhancements that would have been applied based on the evidence that would have been heard at trial.
>
> THE COURT: Okay. So stipulated.
>
> MS. WHITE [Handy's attorney]: That's correct. We stipulate.

29

(TR. at p. 146, lines 22-25 through p. 147, lines 1-11).

If Handy would have been convicted at trial, (based on the drug amount indicated in the revised Presentence Investigation Report (Exhibit J), Handy's criminal history, and the enhancements found by this court) he would still have had a criminal history category III, his total offense level would have equaled 40,[22] and his guideline sentencing range would have been 360 months to life.[23] Thus, the court would have likely sentenced Handy to a term of imprisonment greater than the 327 months he received by pleading guilty.

### III.  Conclusion

For the reasons set forth above, the court concludes that: (1) Handy failed to prove that his attorneys advised him that he would not receive more than 13 to 17 years of imprisonment; and (2) Handy failed to prove that his attorneys advised him to deny that he received a promise of a specific sentence at the guilty-plea

---

[22]    By pleading guilty, Handy received a 3 level reduction for acceptance of responsibility, putting his total offense level at 37. Further, Handy received a benefit for the plea agreement, in which the Government agreed not to seek an enhanced punishment by reason of defendant's prior convictions. 21 U.S.C. § 851.

        If Handy proceeded to trial, he would have lost these benefits and he would have been exposed to a mandatory minimum of 20 years and his total offense level would have been raised to 40.

[23]    By pleading guilty with an offense level of 37 and a criminal history category of III, Handy's guideline range was 262-327 months. The court sentenced Handy to the upper limits of this range, i.e., 327 months of imprisonment.

hearing.   Further, Handy was not prejudiced by his attorneys'
performance.   Accordingly;

   **IT IS ORDERED** that Handy's request for §2255 relief be and is
hereby **DENIED.**

   New Orleans, Louisiana, this **5th** day of **February**, **2007.**


                                   _____
                                        A.J. McNAMARA
                                 UNITED STATES DISTRICT JUDGE

31